**Ex parte John Phillips WILLIAMS.**

Nos. 2–93–239–CR—2–93–243–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 9, 1994.

Rehearing Overruled March 15, 1994.

H.F. Rick Hagen, Denton, for appellant.

Bruce Isaacks, Dist. Atty. Kathleen A. Walsh, Nancy Jessee, Asst. Dist. Attys., Denton, for appellee.

Before FARRIS, LATTIMORE and DAY, JJ.

## OPINION

DAY, Justice.

This is an appeal from the trial court's denial of Williams' Application for Writ of Habeas Corpus and Special Plea of Double Jeopardy.

We affirm.

Williams was originally charged in five separate felony indictments, which were consolidated for trial. Trial began on December 7, 1992. On December 10, 1992, during presentation of the State's case-in-chief, the trial court declared a recess on its own motion. Outside the jury's presence, the judge advised defense counsel, Michael Duggins, that he had been informed Duggins was disbarred in October 1992. Duggins responded that he knew the action was pending but "did not perceive any further notice." The court held Duggins in contempt of court for appearing and defending Williams' case when counsel knew or should have known he was disbarred. Then the judge stated:

Now, until—I'm going to bring the jury out; and on the Court's own motion, the Court's going to declare a mistrial in this case. The Court has no alternative at this point in time.

Anything from the State?

[PROSECUTOR]: Yes, Your Honor. I would make a request. I don't know if this is the proper time; but after the Court does declare a mistrial, I would ask that the Court immediately readmonish the Defendant about his rights to an attorney. And should the Defendant wish to have a court appointed attorney, I believe that attorney would have, by law, ten days notice before trial starts. I'm not sure the law requires the same ten day notice for a hired attorney; but I would ask this Court set this case again for retrial as soon as possible after the expiration of those ten days, if that has to happen.

. . . .

THE COURT: All right. This Court is going to call the jury in and we're going to recess this trial at this time on the Court's own motion. I am not going to discharge the jury at this time.

Anything from the State?

[PROSECUTOR]: Your Honor, I didn't—Did you say you are going to discharge—

THE COURT: I am not going to discharge the jury at this time. Anything from the State?

[PROSECUTOR]: No, sir.

THE COURT: Anything from the Defendant?

(NO RESPONSE)

THE COURT: Let's bring the jury in.

The court then recessed the trial until the following morning. The next day, after announcing that he was declaring a mistrial, the judge released the jury.

On January 6, 1993, the trial court assigned new trial counsel to represent Williams. The new defense counsel asked for and received a transcription of the former trial. After reviewing the transcription, Williams' new counsel filed an Application for Writ of Habeas Corpus and Special Plea of Double Jeopardy. Grounds for the application and plea were that the trial court had failed to: (1) consider less drastic alternatives than mistrial; (2) admonish Williams of his right to proceed with the trial with Duggins as counsel, with other counsel, or *pro se;* and (3) give adequate consideration to Williams' double jeopardy rights before declaring a mistrial. Williams asked the trial court to issue a writ dismissing the prosecutions against him.

After a hearing, the trial court denied the requested relief and set the cases for trial on July 12, 1993. Williams then filed an Application for Writ of Prohibition and Motion to Stay Proceedings in this court. We issued a writ of prohibition and ordered the trial court to stay proceedings pending the outcome of this appeal. *Williams v. White,* 856 S.W.2d 847, 849 (Tex.App.—Fort Worth 1993, orig. proceeding).

In three points of error, Williams asserts the trial court's ruling violates his right against double jeopardy under U.S. CONST. amends. VI & XIV; TEX. CONST. art. I, § 14; and TEX.CODE CRIM.PROC.ANN. arts. 1.10 (Vernon 1977), 27.05 (Vernon 1989). Williams does not ask us to distinguish between his federal and state rights against double jeopardy, so we will address them together. *See Santikos v. State*, 836 S.W.2d 631, 632 n. 1 (Tex.Crim.App.), *cert. denied*, — U.S. —, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992); *Heitman v. State*, 815 S.W.2d 681, 690–91 n. 23 (Tex.Crim.App. 1991).

■ A criminal defendant has a significant interest in having his trial completed by a particular tribunal. *United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 556 (1971). Nonetheless, this right must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments. *Id.* at 480, 91 S.Ct. at 554–55, 27 L.Ed.2d at 554. Thus, the double jeopardy clause does not prohibit a retrial if the defendant consents to one, or if a retrial is mandated by manifest necessity. *Id.* at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556–57.

■ When a mistrial is based on manifest necessity, reviewing courts must satisfy themselves that the trial judge exercised sound discretion. *Arizona v. Washington*, 434 U.S. 497, 514, 98 S.Ct. 824, 835, 54 L.Ed.2d 717, 733 (1978). If a trial judge acts irrationally or irresponsibly in declaring a mistrial, his action cannot be condoned. *Id.* A mistrial order must be supported by a "high degree" of necessity. *Id.* at 516, 98 S.Ct. at 835, 54 L.Ed.2d at 734. *See also Torres v. State*, 614 S.W.2d 436, 442 (Tex. Crim.App. [Panel Op.] 1981).

■ Although each case turns on its own facts, sound discretion normally requires the judge to consider less drastic alternatives to a mistrial, and he must also give adequate consideration to the defendant's right against double jeopardy. *Torres*, 614 S.W.2d at 442 (citations omitted). There is no constitutional violation if the trial judge fails to expressly state these considerations in the record, so long as his basis for the mistrial order is adequately disclosed. *Id.* If the judge fails to set forth any explicit finding of "manifest necessity," we must determine whether his mistrial order reflects the exercise of sound discretion in implicitly finding a "manifest necessity" for the appellant's retrial. *Id.*

■ In deciding whether the trial court's order in this case is correct, we must ascertain two things: (1) whether the judge's basis for declaring a mistrial is adequately reflected in the record; and (2) whether his order for a mistrial reflects the exercise of sound discretion. *Torres*, 614 S.W.2d at 442.

■ We find the trial court's basis for declaring a mistrial is adequately reflected in the record in this case. After stating that he had been informed defense counsel was disbarred, the judge announced his intention to declare a mistrial because "[t]he Court has no alternative at this point in time."

■ We must now consider whether the trial court exercised sound discretion by declaring a mistrial. As we have previously noted, the exercise of sound discretion normally includes a consideration of less drastic alternatives. *Harrison v. State*, 788 S.W.2d 18, 22 (Tex.Crim.App.1990). Of necessity, this rule presupposes that realistic alternatives are available. In this case, the trial judge stated his opinion that he had no alternative to a mistrial. We agree.

Williams, on the other hand, argues the judge had at least three viable alternatives at his disposal: (1) proceed with the trial with Duggins as counsel; (2) appoint new defense counsel and proceed with the trial; and (3) allow Williams to proceed *pro se*.

Relying on *Jordan v. State*, 786 S.W.2d 1 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd), Williams contends the record contains no competent evidence that Duggins was disbarred. The appellant in *Jordan* testified at a motion for new trial hearing that he had read a newspaper article that said "something about" his lawyer not having a law license because of failure to pay bar dues. The Houston court found this testimony was not competent evidence that the appellant's lawyer was unlicensed at the time of trial. *Id.* at 2.

Williams' situation is distinguishable from *Jordan,* however, because Duggins' status as an attorney is easily ascertainable. A court of appeals may take judicial notice of facts that are notorious, well known, or easily ascertainable. *McCulloch v. State,* 740 S.W.2d 74, 76 (Tex.App.—Fort Worth 1987, pet. ref'd). Upon inquiry to the State Bar of Texas, we have learned and take judicial notice of the fact that Duggins was disbarred on October 16, 1992, nearly two months before Williams' trial began. This evidence supports the trial court's finding that Duggins was disbarred.

Since Duggins was disbarred nearly two months before trial began, he was no longer "counsel." Thus, he should never have represented Williams in this case.

 The Sixth Amendment right to counsel applies to all state felony prosecutions. *Narvaiz v. State,* 840 S.W.2d 415, 433 (Tex.Crim.App.1992) (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The Texas Constitution grants this right, as well. TEX. CONST. art. I, § 10; *Poullard v. State,* 833 S.W.2d 270, 271 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). *See also* TEX.CODE CRIM.PROC.ANN. art. 1.051 (Vernon Supp. 1994). The right to counsel automatically becomes effective at the inception of adversary judicial criminal proceedings and must be implemented by the State at every critical stage of those proceedings, even absent a specific request, unless the accused intelligently and voluntarily yields his prerogative to the assistance of an attorney. *Fuller v. State,* 829 S.W.2d 191, 205 (Tex.Crim.App. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993). In Texas, a criminal prosecution is considered to be in progress after the accused has been formally arrested and taken before a magistrate, or when he has been indicted or charged by complaint and information with a criminal offense. *Fuller,* 829 S.W.2d at 205. *See also McCambridge v. State,* 778 S.W.2d 70, 75 (Tex.Crim.App.1989) (critical stage in the criminal process does not occur until formal charges are brought against a suspect), *cert.*

*denied,* 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990).

In this case, however, since Duggins was disbarred, Williams was without counsel *from the beginning of trial* and during several critical stages, including when he elected to have the court assess his punishment, during voir dire, and during the State's presentation of evidence. At the habeas corpus hearing, Williams testified that he believed he was represented by counsel during voir dire and when he elected to have the court assess punishment. In addition, there is no other evidence in the record that Williams waived his right to counsel, either orally or in writing.

Thus, from the inception of the proceeding, Williams was deprived of a fundamental right guaranteed to all felony defendants, and the trial judge had no choice but to declare a mistrial. The basis for manifest necessity in this case was not merely Duggins' disbarment; rather, mistrial was necessary because, without waiving his fundamental right to counsel, Williams was deprived of same during the part of the trial *that had already occurred.*

Relying on *Parrish v. State,* 840 S.W.2d 63 (Tex.App.—Amarillo 1992, no pet.), Williams asserts the right to assistance of counsel requires only *effective* assistance of counsel. *See id.* at 66 (nonpayment of bar dues does not automatically mean attorney will perform incompetently). Reasoning from *Parrish,* Williams also argues that Duggins' disbarment—for whatever reason—does not necessarily infringe upon his (Williams') Sixth Amendment right to effective assistance of counsel. We are unpersuaded by this argument for several reasons.

 First, in Texas, a disbarred lawyer is deemed incompetent to represent a criminal defendant as a matter of law. *Curry v. Estelle,* 412 F.Supp. 198, 200 (S.D.Tex.1975), *aff'd,* 531 F.2d 1260 (1976); *see also Erdelyan v. State,* 481 S.W.2d 843, 845 (Tex.Crim. App.1972).

Second, *Parrish* cites *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as authority for the Amarillo court's conclusion that assistance of

counsel means only effective assistance of counsel. *Parrish,* 840 S.W.2d at 66 (*citing Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063, 80 L.Ed.2d at 692). With all due respect to our sister court, we read *Strickland* as holding that the constitutional guarantee to assistance of counsel means an accused is entitled *both* to *counsel* and to reasonably effective assistance from that counsel:

> Because of the vital importance of counsel's assistance, this Court has held that, with certain exceptions, a person accused of a federal or state crime has the right to have counsel appointed if retained counsel cannot be obtained. [Citations omitted.] That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.
>
> *For that reason,* the Court has recognized that "the right to counsel is the right to the effective assistance of counsel." [Citations omitted.]

*Strickland,* 466 U.S. at 685–86, 104 S.Ct. at 2063, 80 L.Ed.2d at 692 (emphasis added).

▇ As Duggins was disbarred prior to trial, he was not the counsel anticipated by our federal and state constitutions, and his ability to render effective assistance is therefore irrelevant to the issue at hand. Representation by a disbarred lawyer is tantamount to no legal representation at all. If a criminal defendant has no lawyer, prejudice is legally presumed in every case. *United States v. Taylor,* 933 F.2d 307, 312 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 235, 116 L.Ed.2d 191 (1991).

We also note our Court of Criminal Appeals' decision in *Hill v. State,* 393 S.W.2d 901 (Tex.Crim.App.1965). In that case, Hill's lawyer, Desmond Gay, was appointed to represent him on November 9, 1964. Because Gay had failed to timely pay his annual State Bar dues in 1964, he was removed from the State Bar membership roll on September 1, 1964. On November 30, 1964, he was rein-

stated upon payment of his dues and continued in good standing thereafter. *Id.* at 902. Hill appealed his conviction on the basis that the trial court had failed to furnish him with a qualified attorney to represent him. *Id.*

The *Hill* court, recognizing that the State Bar rules provided that an attorney ceased to be a member of the State Bar for nonpayment of dues and was prohibited from practicing law in Texas, observed that neither the State Bar statute nor its rules contained a provision depriving the delinquent attorney of his law license. *Id.* at 903–04. The court stated that, when a delinquent attorney pays his dues, he automatically resumes his status as an active member of the State Bar of Texas. *Id.* at 904. In addition, since the State Bar Act is retroactive in application, when the delinquent attorney-member pays his dues, he is restored to his pre-delinquent status. *Id.*

When Gay paid his delinquent bar dues, he "purged" himself of delinquency. As a result, his acts during the period when his name was removed from the membership roll of the State Bar were valid and "revitalized" when he paid up his delinquency. *Id.* at 904–05.

Such is not the case before us. Duggins was not merely removed from the State Bar membership roll for the nonpayment of bar dues. According to the General Counsel for the Texas State Bar, he was disbarred—and surrendered his license—because he settled claims without client knowledge or consent and then failed to turn the settlement proceeds over to the client. *Hill* has no application to Williams' situation.

Because Williams was denied his constitutional right to assistance of counsel *for the first three days of trial,* the trial court did not abuse its discretion by declaring a mistrial based on manifest necessity. Moreover, the trial court did not abuse its discretion by failing to consider other less drastic alternatives because there were none.

We overrule Williams' points of error. The trial court's order denying relief is affirmed.