**In the Matter of S.G., Jr., a Minor.**

**No. 04–94–00519–CV.**

Court of Appeals of Texas,
San Antonio.

Nov. 20, 1996.

Luis R. Vera, Jr., Becki Fahle, San Antonio, for appellant.

Robert C. Richardson, Angela Moore, Assistant Criminal District Attorney, San Antonio, for appellee.

Before LÓPEZ, STONE and DUNCAN, JJ.

DUNCAN, Justice.

S.G., a juvenile, appeals the trial court's denial of relief in a habeas corpus proceeding. We affirm.

### FACTS

S.G., a juvenile, was accused of indecency with a child, namely anally raping J.R. S.G. pled not true, and a jury was empaneled and sworn to hear the case. Prior to trial, the court granted a motion in limine regarding a claim filed by J.R.'s family against S.G.'s family's homeowner's insurance, and a resulting "friendly suit," which arose out of an incident in which S.G. shot J.R. with a BB gun. This claim arose after the alleged offense, but before the petition against S.G. was filed. It was S.G.'s counsel's theory that the petition was filed against S.G. in retaliation for the BB gun incident. In any event, during opening statements, the State and S.G.'s counsel agreed that the proper resolution of the case would turn on S.G.'s and J.R.'s credibility.

During S.G.'s case in chief, his counsel called a neighbor of S.G.'s and J.R.'s, and the following exchange occurred:

Q: I'm going to ask you one question concerning [J.R.]. Do you know him?

A: Yes, I do.

Q: Okay. Do you know approximately how old he is now?

A: I'd say probably about eight or nine.

Q: Okay. And you know what this case is about, do you not?

A: Yes, I do.

Q: Okay. The one question is: Have you ever observed [J.R.] doing anything that would be considered obscene?

A: Yes, I have.

At this point, the State objected on the ground that the testimony sought to be elicited was irrelevant and requested a hearing outside the presence of the jury. After sustaining the objection, the court released the jury and conducted a hearing:

The Court: Okay.

S.G.'s counsel: Can I just continue asking him that?

The State: Let me just make one objection, very clearly, on the record.

The Court: Okay.

The State: I think the question is irrelevant. It's highly prejudicial and it should have been done outside the presence of the jury like I asked before.

The Court: All right.

The State: He gave the Court assurance it was going to be one simple question.

S.G.'s counsel: That's what it is, concerning [J.R.].

The State: I'm tempted to just ask for a mistrial at this point.

S.G.'s counsel: Your Honor, [J.R.'s mother] testified yesterday to some of the point, you know, that he never lied; blah, bla, bla. Well, [J.R.] got up there and testified he knows right from wrong, this, that and the other, and so on and so forth. I simply asked if he's observed, and it's proper questioning, and for the—I mean, we can do it here for purpose of the—at least for purpose of the record, and then you make your determination whether or not the jury should hear it. I think that's fair.

The State: I mean, let's get it on the record, but it also constitutes an extraneous act of misconduct. You know, it goes towards his character and I just don't think it's—Let's put it on the record.

S.G.'s counsel: Your Honor, he's put his entire character in issue when he took the stand and answered the questions that he answered, knowing about—they told him to tell truth. He knew the difference between a little lie and a big lie, and so on and so forth. He put his whole character in issue, and that's what this whole trial is about. This whole trial is a character issue, who the jury's going to believe. There's nothing else involved. They have no medical evidence. It's strictly character.

THE COURT: Okay.

The State: Well, let's see what it is first.

S.G.'s counsel: Sure.

THE COURT: All right. You may proceed....

At this point, the neighbor testified that J.R. wrote "fuck you" on his sidewalk. The hearing continued:

The State: One of the problems with this too, Judge, is that then we have the right to get into bias for his testimony, which then gets into a matter that's been excluded by the Court because going to be on trial for a matter between [J.R.'s family]. And it's—

The Court: Okay.

The State: I mean, it goes directly into—

The State: It opens up a bucket of worms.

The Court: I agree it does.

The State: I don't think it's relevant and—

S.G.'s counsel: If it's going to be denied, Your Honor—and I don't know if you ruled. Have you ruled?

The Court: No, I haven't.

S.G.'s counsel: I mean, number one, again, I reiterate, [J.R.] put his entire character on the line when he took the stand. They put him on the stand, I didn't. He testified they told him to tell the truth, only the truth. He described to the Court that he knew between lying and not lying. He talked about things about what was dirty or things like that. I don't remember his whole testimony.

He's simply testifying to the fact that he has observed this little boy do things that go directly to his character. Denying us the right to cross-examine him before the jury and bring that testimony forward, okay, is denying my client's right to present, again, his whole theory of the case, that there's other motives involved. There's other things involved. And, you know, I think it's proper. I mean, they put his character on, we didn't.

The Court: Okay. Anything further?

The State: Well, Judge, my objection is on several basis. Number one, [J.R.] never took the stand and denied doing anything like that to begin with. He never

took the stand and said, "I don't use any kind of profanity."

And, secondly, this case is not about [J.R.'s family] and [the neighbor], and any acts that [J.R.'s family] may have committed against [the neighbor], or not, and it's not relevant, and I'd ask for a mistrial.

I think what he has asked is highly prejudicial to the jury. And the fact that he wrote a four letter word on the sidewalk—and the way he asked the question is: "Have you ever seen [J.R.] do anything obscene," is very prejudicial. Even if you instruct the jury, you know, who knows what in the world they're going to be thinking about this.

The Court: Are you asking for a mistrial?

The State: I'm asking for a mistrial, Judge.

The Court: I don't think I can instruct. I agree with you, so I'll grant your mistrial. Do you want to start this on the 1st?

S.G.'s counsel: You're granting a mistrial on that?

The Court: Yes, sir. I don't think that I can—that's so prejudicial, I don't think there's anything that can cure it.

S.G.'s counsel: For the—You know, I don't even know if it's—Is there an appeal— Well, I guess there is no appeal on a mistrial, is there?

The Court: Not on a final judgment, no.

S.G.'s counsel: I can't believe that.

After the trial court set a new trial date, S.G. filed a motion for stay and plea in bar, as well as an application for a writ of habeas corpus, both alleging a second trial was barred by double jeopardy. The trial court did not hear or rule upon S.G's motion for stay and plea in bar, but it denied habeas corpus relief. S.G. has appealed this ruling.

### APPELLATE JURISDICTION[1]

The State first argues that we lack jurisdiction to entertain S.G.'s appeal because the trial court's order granting its motion for a

---

1. S.G. has not attempted to invoke, and we do not have, original jurisdiction to issue a writ of habeas corpus in these circumstances. *See* Tex. Const. art. V, § 6; Tex. Gov't Code Ann. § 22.221 (Vernon 1988).

mistrial is an interlocutory order and not made appealable by statute. We disagree.

■ A juvenile faced with delinquency proceedings is clearly entitled to double jeopardy protection. 29 Thomas S. Morgan, JUVENILE LAW AND PRACTICE § 41 (Texas Practice 1985) (citing *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975)). In criminal cases, it is well-settled that the district court has jurisdiction to entertain a writ of habeas corpus to prevent a double jeopardy violation and that the accused may appeal the trial court's denial of relief to this court. *Stephens v. State,* 806 S.W.2d 812, 814 (Tex.Crim.App.1990), *cert. denied,* 502 U.S. 929, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991); *Ex Parte Robinson,* 641 S.W.2d 552, 555 n. 7 (Tex.Crim.App. [Panel Op.] 1982); *see* TEX.CODE CRIM. PROC. ANN. arts. 11.01, 11.05 (Vernon 1977). Accordingly, to the extent a juvenile delinquency proceeding is criminal in nature, this court possesses appellate jurisdiction to review the trial court's denial of relief.

■ The State argues, however, that because a juvenile case is civil, rather than criminal, we lack jurisdiction to review the trial court's order granting the State's motion for a mistrial. We agree that, at the time this case was tried, juvenile cases were generally governed by the civil rules. *E.g., In the Matter of M.R.,* 858 S.W.2d 365, 366 (Tex.1993), *cert. denied,* 510 U.S. 1078, 114 S.Ct. 894, 127 L.Ed.2d 87 (1994).[2] We further agree that in civil cases this court lacks jurisdiction to review a trial court order granting a motion for a mistrial. *See Cum-*

*mins v. Paisan Constr. Co,* 682 S.W.2d 235, 236 (Tex.1984). However, the State misperceives the posture of this case. S.G. does not appeal the trial court's order granting a mistrial; he appeals the trial court's order denying habeas corpus relief, and that order is appealable to this court even if the underlying case is civil in nature because it is considered a final judgment in a civil case. *Harbison v. McMurray,* 138 Tex. 192, 158 S.W.2d 284, 287–88 (1942);[3] *cf. In the Matter of M.C.,* 915 S.W.2d 118 (Tex.App.—San Antonio 1996, no writ) (jurisdiction established because juvenile's appeal was not from temporary detention order but from denial of habeas corpus relief).[4]

■ The State next argues that we lack jurisdiction over S.G.'s appeal because he is not being detained; therefore, any opinion we might issue would be merely advisory. We again disagree. For purposes of an application for a writ of habeas corpus, "restraint" means "'the kind of control which one person exercises over another, *not to confine him* within certain limits, *but to subject him to the general authority and power of the person claiming such right.'"* *Ex Parte Ormsby,* 676 S.W.2d 130, 132 (Tex. Crim.App.1984) (quoting TEX.CODE CRIM. PROC. ANN. art. 11.22) (emphasis in original), *overruled in part on other grounds, Ex Parte Renier,* 734 S.W.2d 349 (Tex.Crim.App.1987). Plainly setting a case that is barred by double jeopardy for trial subjects S.G. to the "general power and authority" of the State. We therefore reject the State's jurisdictional challenge and turn to the merits of S.G.'s appeal.

2. Pursuant to section 51.17(c), TEX. FAM.CODE ANN., the rules of criminal evidence now apply in a judicial proceeding involving a juvenile. TEX. FAM.CODE ANN. § 51.17(c) (Vernon 1996).

3. In this respect, the decision in *Harbison* relied upon article 2249, which provided in pertinent part that "[a]n appeal ... may be taken to the Court of Civil Appeals from every final judgment of the district court in civil cases...." *Harbison,* 158 S.W.2d at 286. Since *Harbison,* article 2249 has been recodified as section 51.012 of the Texas Civil Practice and Remedies Code. As recodified, section 51.012 purports to limit our jurisdiction in cases involving final judgments of the district courts to those "in which the judgment or amount in controversy exceeds $100, exclu-

sive of interest and costs...." TEX. CIV. PRAC. & REM.CODE ANN. § 51.012 (Vernon 1986); *see also* Tex. Gov't Code Ann. § 22.220 (Vernon 1988). We believe this restriction is ineffective, however, since "no substantive change in the law [was] intended" by the recodification. Act of June 16, 1985, 69th Leg., R.S., ch. 959, § 10, 1985 Tex. Gen. Laws 3322. We therefore continue to follow *Harbison.*

4. We recognize other courts have held to the contrary. *See In the Matter of J.L.D.,* 704 S.W.2d 395, 396 (Tex.App.—Corpus Christi 1985, no writ); *Stephenson v. State,* 515 S.W.2d 362, 363 (Tex.Civ.App.—Dallas 1974, writ dism'd); *Mendoza v. Baker,* 319 S.W.2d 147, 148–51 (Tex.Civ. App.—Houston [1st Dist.] 1958, no writ).

## Standard of Review

The trial court's ruling on an application for writ of habeas corpus grounded upon double jeopardy is subject to an abuse of discretion standard of review. *Ex Parte Williams,* 870 S.W.2d 343, 346 (Tex.App.—Fort Worth 1994, pet. ref'd) (citing *Arizona v. Washington,* 434 U.S. 497, 514, 98 S.Ct. 824, 835, 54 L.Ed.2d 717, 733 (1978)). A trial court abuses its discretion in granting a mistrial for manifest necessity only when it acts irrationally or irresponsibly. *Ex Parte Williams,* 870 S.W.2d at 346.

## Double Jeopardy

Once jeopardy attaches, as it did in this case when the jury was empaneled and sworn, an accused is entitled to have his case decided by that jury unless he consents to a retrial or a retrial is mandated by "manifest necessity." *E.g., Harrison v. State,* 788 S.W.2d 18, 21–22 (Tex.Crim.App.1990); *Torres v. State,* 614 S.W.2d 436, 441 (Tex.Crim.App.1981) (citing, *e.g., United States v. Jorn,* 400 U.S. 470, 486–88, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971)). "The Fifth Amendment prohibition against twice putting a person in jeopardy for the same offense" thus " 'must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.' " *Harrison,* 788 S.W.2d at 21 (quoting *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949)).

### Consent

If the defendant consents to a mistrial, the issue of manifest necessity is immaterial. *Garner v. State,* 858 S.W.2d 656 (Tex.App.—Fort Worth 1993, pet. ref'd). Consent may be express, or it may be inferred from the totality of circumstances. *Torres,* 614 S.W.2d at 441–42. However, before consent may be inferred, counsel must be given an opportunity to object. *Id.* "[C]onsent will not be inferred from a silent record." *Garner,* 858 S.W.2d at 659; *see also Davis v. State,* 144 Tex.Crim. 474, 164 S.W.2d 686 (1942).

In this case, S.G.'s counsel did not object to the trial court's declaration of a mistrial; he simply asked whether the court was in fact granting a mistrial and whether that order would be appealable. The trial judge confirmed that she was granting a mistrial and informed S.G.'s counsel that an appeal was not available. Under these circumstances, we decline to hold that S.G. consented to the mistrial.

### Manifest Necessity

"A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached...." *Illinois v. Somerville,* 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425, 431 (1973). "The asking of an improper question, by itself, will seldom call for a mistrial." *Hernandez v. State,* 805 S.W.2d 409, 413 (Tex.Crim.App. 1990), *cert. denied,* 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991). But "when the question is 'clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds,' " a mistrial is appropriate. *Id.* at 414 (quoting *Gonzales v. State,* 685 S.W.2d 47, 49 (Tex. Crim.App.), *cert. denied,* 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985)); *see, e.g., Lewis v. State,* 865 S.W.2d 478, 480 (Tex. App.—Tyler 1993, no pet.).

Contrary to the arguments of S.G's counsel, the testimony S.G.'s counsel sought to elicit was not admissible. *See* Tex.R. Civ. Evid. 404, 405. The philosophical basis for these exclusionary rules is that this type of character evidence "tends to inject into a trial a 'dangerous baggage of prejudice, distraction from the issues, time consumption, and hazard of surprise.' " Newell H. Blakely, *Article IV: Relevancy and Its Limits,* Texas Rules of Evidence Handbook, 20 Hous. L. Rev. 151, 190 (1983) (quoting Charles McCormick, Handbook on the Law of Evidence § 188, at 445 (2nd ed.1972)). That was precisely the problem here.

In the context of this case, the way S.G's counsel chose to frame the question, and the neighbor's affirmative answer, implied that J.R. had engaged in an obscene sexual act—like that for which S.G. was on trial—when J.R. had in fact simply scrawled a four-letter word on a neighbor's sidewalk—an act that could hardly be classified as obscene or even perhaps unusual among young boys. We

thus agree with the trial court that the question and answer were improper, irrelevant, inadmissible, "highly inflammatory," and "unfairly prejudicial."

But once the improper question was asked, the State and the trial court faced the age-old dilemma of how to get the skunk out of the jury box. Plainly the trial court could have simply instructed the jury to disregard the improper question and answer. But we cannot say it was an abuse of discretion to rule that an instruction to disregard would not remove the prejudice. As the State so aptly put it, "who knows what in the world they're going to be thinking about this"? It is also clear that the State could have explained J.R.'s "obscene" act on cross-examination. But it could not have gone into the neighbor's motive for testifying against J.R. because to do so would elicit testimony that had been ruled inadmissible because it was also irrelevant and unfairly prejudicial to S.G. Under these difficult circumstances, we simply cannot say that the trial judge acted irrationally or irresponsibly in declaring a mistrial.

### CONCLUSION

S.G.'s double jeopardy rights will not be infringed by a second trial because his counsel's conduct produced the manifest necessity requiring a mistrial. Accordingly, we affirm the trial court's denial of habeas corpus relief.