COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-07-372-CR

 

 

NICHOLAS TRAMMELL                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Introduction

Appellant Nicholas Trammell appeals his
conviction for aggravated assault.  In
two points, he asserts that the trial court erred by excluding a self-defense
instruction from the jury charge and by refusing to allow pro bono counsel to
assist his court-appointed counsel at trial. 
We affirm.

  

 








Background Facts

Around noon on September 30, 2006, appellant and
his friend Everett Banks rode in appellant=s white
car to Enzifer Jordan=s house to smoke marijuana and
drink alcohol.  Enzifer, who was
barbequing, had drunk three or four beers that day and had also used
methamphetamine.  Everett became drunk,
and he and Enzifer began to argue.[1]  After the situation settled, Everett and
appellant returned to appellant=s car;
however, because appellant said something to Enzifer, Enzifer followed them and
kicked the car.  Appellant began to
get out of the car with a screwdriver in his hand; Enzifer responded by
grabbing a knife that was on his grill.[2]  Enzifer=s
neighbor yelled at him to calm down; appellant and Everett then left the scene
without any physical contact having occurred between appellant and Enzifer.








That night at around 11 p.m., as Enzifer left his
house to get a drink from Sonic, he noticed a white car with its headlights off
parked on his street. Enzifer drove his car toward the white car, and he saw
appellant sitting inside.  Enzifer asked
appellant what he was doing there; Enzifer then said, AMan, we
can handle this and just fight or we can just go on our separate ways.@  Appellant asked Enzifer why he had kicked
appellant=s car; appellant then pulled out
a sawed-off shotgun, pointed it through his open car window, and shot Enzifer
as Enzifer sat in his own car.  The
shotgun pellets hit Enzifer=s
triceps and his chest.  As appellant
drove away, Enzifer put his car in reverse and returned to his house.  Enizifer=s
friend, Casey Underwood (who was drinking alcohol at Enzifer=s house
for about an hour preceding the shooting)[3]
called 911, and Enzifer=s neighbor, Heather McDaniel,
assisted Enzifer until the police arrived. 

Fort Worth Police Department (FWPD) Officer Shawn
Greene went to the scene, and he saw Enzifer=s
shotgun wounds[4]
as Enzifer was lying on his back in his driveway.  Enzifer, who was angry and was screaming, did
not initially cooperate with Officer Greene=s
investigation.  Medical personnel arrived
at the scene, and they took Enzifer to a hospital.[5]








Appellant went to his father=s house,
and he told his father, Jay Trammell, that he had shot someone.  The next morning, Jay went to visit appellant=s mother,
Alena Schram, to tell her what had happened. 
With Jay=s agreement, Alena called the
police.  Alena, Jay, appellant, and the
shotgun were at Jay=s house when the police arrived.[6]  FWPD Officer Jeffery Brady took possession of
the  shotgun, which contained a spent
shotgun shell casing; he also retrieved a full box of unused shells.

In February 2007, based on the shooting, a
Tarrant County grand jury indicted appellant with aggravated assault.  See Tex. Penal Code Ann. ' 22.02(a)(2)
(Vernon Supp. 2008).[7]  Appellant certified his indigence, and he
requested and received a court-appointed attorney. 

In
October 2007, after the parties filed various pretrial motions and other
documents, the trial began.  Before voir dire
of the jury panel, the trial judge noticed another attorney sitting at the
counsel table with appellant=s appointed attorney (Lisa Hoobler), and the
following exchange occurred:  

 

 

 








THE COURT:       And who is this at the table?

 

MS. HOOBLER:    With the Court=s permission, Alisha
Johnson is volunteering as second chair, if I could, Your Honor.

 

THE COURT:       Honestly, it=s 1:45.  I am simply appalled that you are waiting to
this time to ask for co‑counsel to sit with you.  We=ve been here all day.  I=ve been here since 9:00.  You=ve been here since 9:00, you know ‑‑

 

MS. HOOBLER:    May I tell you why I=ve made this mistake?

 

THE COURT:       Yeah, I=d love to hear it.

 

MS. HOOBLER:    If the Court will recall, the day that I had
bronchitis, and we were set before and you had gave us a continuance for that,
I had thought that I had brought it up then. 
We had prepared as far back as that time, and I thought I had asked you
that day.  It was my intention, and it is
my oversight, Your Honor.

 

THE COURT:       Did you ask me that day?

 

MS. HOOBLER:    I have no recollection, Your Honor.  I thought in my mind that I had.  It was on my list of things.  She and I had talked about asking you in
advance.

 

THE COURT:       Well, she doesn=t have standing to ask
for anything.

 

MS. HOOBLER:    I just mean to tell you that I knew that I
meant to do that, and if I=ve left it out, it wasn=t ‑‑ I wasn't
trying to get around you or anything else. 
I just have made a simple mistake.

 








THE COURT:       I=m not feeling personally affronted.  As the Court, you don=t get to wait to the day
of trial, the minute of trial to ask for changes like co‑counsel.  You just don=t.  That ain=t how it works. 
You=re appointed.  You don=t get to do that. 
You don=t get to make those
decisions.  The Court makes decisions
about counsel.

 

MS. HOOBLER:    Yes, Your Honor.

 

THE COURT:       Has she had any contact with your client?

 

MS. HOOBLER:    Yes, Your Honor.

 

THE COURT:       In what regard?

 

MS. HOOBLER:    Just a brief interview, and then she=s helped me with my
investigator and my preparation.

 

THE COURT:       And the name is what?

 

MS. JOHNSON:   Alisha Johnson.

 

THE COURT:       Are either of you board certified?

 

MS. JOHNSON:   No.

 

MS. HOOBLER:    No.

 

THE COURT:       Ms. Hoobler, how long have you been in
practice?

 

MS. HOOBLER:    Eight years.

 

THE COURT:       Ms. Johnson?

 

MS. JOHNSON:   Thirteen years.

 

THE COURT:       I=m sorry?

 

MS. JOHNSON:   Thirteen years.

 

THE COURT:       And are you both on the wheel for this
level of offense?








MS. HOOBLER:    I am, Your Honor.

 

THE COURT:       Ms. Johnson?

 

MS. JOHNSON:   No, I am not, Your Honor.

 

THE COURT:       Then you cannot sit at tables.[8]

 

As voir dire proceeded, the parties questioned
the jury panel at length about self-defense issues.  After the trial court empaneled the jury,
appellant pled not guilty.  The next
morning, before the parties= opening
statements, appellant=s counsel asked the trial court
to reconsider its ruling regarding Ms. Johnson=s
assistance:

MS. HOOBLER:    If I could just clarify, Your Honor, I=m not asking for [Ms.
Johnson] to be appointed.  I=m asking to let her participate
as a second ‑‑

 

THE COURT:       But what is the difference ‑‑

 

MS. HOOBLER:    She ‑‑

 








THE COURT:       No, let me finish.  What=s the difference with her ‑‑ because
you=ve said you=re not asking for her to
be appointed. . . .  But for
her to sit there and participate, she may as well be appointed.  Then what I=ve really done, instead
of giving him, you know, you and a very qualified attorney, I=ve given him you, and
then for free he=s gotten somebody who is
not qualified to handle his case.

 

MS. HOOBLER:    Well, I would just say, Your Honor, it=s very common for more
junior lawyers, as far as experience goes in trial, to sit with more
experienced lawyers to gain experience and to learn how to be effective counsel
themselves.  The State has two
lawyers.  And just for the purposes of
the record, Your Honor, I just need to object under the Sixth Amendment.  He would be entitled to any kind of help that
would volunteer that wouldn=t affect from the budget of the county.  And I do understand the Court=s point and I=ve not taken as argument
yet just to fulfill what I think is my duty of the record.

 

THE COURT:       Well,
and I understand your objection, and I want you to understand that I=m not
talking about the budget of the county. 
I=m
talking about the requirement that the Court have attorneys sitting here.  I mean, I can=t allow
you as a court‑appointed attorney. 
If you were hired and you wanted to call somebody else, then that=s y=all=s
business.  But you=re
appointed, and as an appointed attorney, I honestly do not think, given the
state of, what is it, 26.05 in the court‑appointed counsel rules, that I
can have you, under the felony guidelines promulgated by our district judges,
pursuant to that statute, that I can allow you to have an attorney sitting with
you that is not qualified to handle this case.    








After both parties presented evidence and then
rested, the parties submitted arguments before the trial court on whether the
jury charge should contain a self-defense instruction.  The trial court refused to include such an
instruction, reasoning that it did not Asee
anything except verbal provocation and a man who brought a prohibited weapon to
a redress of grievances, which specifically is not self-defense.@[9]  During closing arguments, the State
emphasized that the jury charge did not contain a self-defense instruction, but
appellant still alluded to his self-defense theory.  The jury briefly deliberated, and they found
appellant guilty.  After hearing evidence
regarding appellant=s punishment, the jury assessed
six years= confinement.  Appellant timely filed his notice of this
appeal.

Self-Defense Instruction

In his first point, appellant asserts that the
trial court erred by refusing to include a jury charge instruction about self-defense.  Appellant specifically objected to the trial
court=s
refusal in this regard.      

Appellate review of error in a jury charge
involves a two-step process.  Abdnor
v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error
occurred; if so, we must then evaluate whether sufficient harm resulted from
the error to require reversal.  Id.
at 731B32. 








A defendant has the burden of producing
sufficient evidence at trial that raises the issue of self‑defense to
have that issue submitted to the jury.  See Davis
v. State, 268 S.W.3d 683, 693 (Tex. App.CFort
Worth 2008, pet. ref=d); Hill v. State, 99
S.W.3d 248, 250B51 (Tex. App.CFort
Worth 2003, pet. ref=d) (explaining that if there is
evidence supporting a self-defense theory, an instruction to the jury is
required whether such Aevidence is weak or strong,
unimpeached or contradicted, and regardless of what the trial court may or may not
think about the credibility of the defense@).  If the evidence, as viewed in the light most
favorable to the defendant, does not support self-defense, an instruction is
not required.  See Granger v. State,
3 S.W.3d 36, 38 (Tex. Crim. App. 1999); Davis, 268 S.W.3d at 693.








Use of deadly force against another in self‑defense
is justified only when the actor reasonably believes such force is immediately
necessary to (1) protect the actor or a third person from the other=s use or
attempted use of deadly force, or (2) prevent the other=s
imminent commission of aggravated kidnapping, murder, sexual assault,
aggravated sexual assault, robbery, or aggravated robbery.[10]  Tex. Penal Code Ann. ' 9.32(a)
(Vernon Supp. 2008); see id. ' 9.01(3)
(Vernon Supp. 2008) (defining Adeadly
force@ as
force Aintended
or known by the actor to cause, or in the manner of its use or intended use is
capable of causing, death or serious bodily injury@); Schiffert
v. State, 257 S.W.3d 6, 14 (Tex. App.CFort
Worth 2008, pet. dism=d).  Force is not justified in response to
verbal provocation alone.  Tex. Penal
Code Ann. ' 9.31(b)(1) (Vernon Supp.
2008).    

Appellant used deadly force when he shot Enzifer
with a shotgun because a shotgun is capable of causing death or serious bodily
injury.  See Thompson v. State,
33 S.W.3d 847, 855 (Tex. App.CTyler
2000, pet. ref=d).  To be entitled to a self-defense instruction,
appellant was therefore required to present some evidence at trial
demonstrating his reasonable belief that shooting the shotgun was immediately
necessary to protect him or a third person from Enzifer=s use or
attempted use of deadly force.  See
Tex. Penal Code Ann. ' 9.32(a)(2)(A).  He did not do so.  

Appellant could not have reasonably believed at
the time of the shooting that his conduct was immediately necessary because,
although Enzifer pointed a knife at appellant several hours before the
shooting, Enzifer remained in his car while appellant shot him, never showed
appellant any weapon, and never indicated that he intended to cause appellant
death or serious bodily injury.  See Hernandez
v. State, No. 04‑05‑00078‑CR, 2006 WL 397922, at *4 (Tex.
App.CSan
Antonio Feb. 22, 2006, pet. ref=d) (mem.
op., not designated for publication) (holding that a wife who had been beaten
by her husband was not entitled to a defensive instruction upon shooting her
husband because there was Ano
evidence showing the immediacy of any threat posed by the victim@);













Smith v. State, 638 S.W.2d 208, 210 (Tex. App.CFort
Worth 1982, no pet.) (affirming the trial court=s
refusal to include a self-defense instruction because, although the victim
struck the defendant in the same encounter in which the shooting occurred and
had threatened the defendant on previous occasions, use of Adeadly
force could not have reasonably been believed to be immediately necessary to
protect [the defendant] against [the victim]@).  Also, even if appellant thought that Enzifer
intended to cause such harm, appellant could have simply driven away from the
scene; shooting the gun was not an immediately necessary response.[11]  See Davis, 268 S.W.3d at 698 (noting
that the defendant could have Asimply
left the apartment@ to avoid a supposed
attack).  Next, while Enzifer=s
statement made while he was in his car, as described above, could be viewed as
an expression of his desire to fight appellant, his words alone did not justify
appellant=s shooting the shotgun.  See Tex. Penal Code Ann. ' 9.31(b)(1);
Lane v. State, 957 S.W.2d 584, 586 (Tex. App.CDallas
1997, pet. ref=d).  Finally, evidence of events that occurred
after the shooting cannot support appellant=s
requested self-defense instruction because such evidence does not relate to
appellant=s alleged belief that force was
necessary at the time he acted.  See
Juarez v. State, 886 S.W.2d 511, 514 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref=d).

For all of these reasons, we conclude and hold
that the evidence at trial did not justify a self-defense instruction and that
the trial court did not err by denying the instruction.  Thus, we overrule appellant=s first
point.

Denial of Pro Bono Counsel








In his second point, based on the colloquies set
forth above, appellant contends that the trial court erred by refusing to allow
pro bono counsel to assist his court-appointed counsel at trial.  He argues that the trial court denied him a
right to the counsel of his choice.[12]  For this proposition, he heavily relies on
the United States Supreme Court=s
holding in United States v. Gonzalez‑Lopez, 548 U.S. 140, 147B52, 126
S. Ct. 2557, 2563B66 (2006). 

In Gonzalez-Lopez, the court considered
whether Aa trial
court=s
erroneous deprivation of a criminal defendant=s choice
of counsel entitles him to a reversal of his conviction.@  Id. at 142, 126 S. Ct. at 2560.  The federal trial court had denied pro hac
vice admission to the defendant=s
desired out-of-state retained counsel, and it had refused to allow that counsel
to have contact with defendant=s local
counsel during his trial.[13]  Id. at 142B43, 126
S. Ct. at 2560.  After a jury convicted
the defendant, he argued that the trial court had denied his Sixth Amendment
right to Apaid counsel of his choosing.@  Id. at 143B44, 126
S. Ct. at 2560B61.  








In analyzing Gonzalez-Lopez=s
argument, the Supreme Court noted that it had previously held that Aa
defendant who does not require appointed counsel [has the right] to
choose who will represent him.@  Id. at 144, 126 S. Ct. at 2561
(emphasis added).  The court then
reversed Gonzalez-Lopez=s conviction because it decided
that the trial court violated Gonzalez-Lopez=s right
to counsel of his choice and that such a violation does not require any
connected showing of harm because it is a structural error.  See id. at 144B52, 126
S. Ct. at 2561B66.  However, the court limited its holding as
pertaining to defendants with appointed counsel, explaining, ANothing
we have said today casts any doubt or places any qualification upon our
previous holdings that limit the right to counsel of choice . . . .  [T]he right to counsel of choice does not
extend to defendants who require counsel to be appointed for them.@  Id. at 151, 126 S. Ct. at 2565
(emphasis added); see also Caplin & Drysdale, Chartered v. United States,
491 U.S. 617, 624, 109 S. Ct. 2646, 2652 (1989) (stating that the Sixth
Amendment Aguarantees defendants in
criminal cases the right to adequate representation, but those who do not have
the means to hire their own lawyers have no cognizable complaint so long as
they are adequately represented by attorneys appointed by the courts@).  Based on this limitation, we conclude that
the holding in Gonzalez-Lopez does not support appellant=s
argument that although he had appointed counsel, he was also constitutionally
entitled to pro bono counsel of his choice. 
        








Similarly to the limitation expressed in Gonzalez-Lopez,
Texas courts have specifically held that an indigent defendant does not have a
right to the counsel of his own choosing.  See Long v. State, 137 S.W.3d 726,
735 (Tex. App.CWaco 2004, pet. ref=d);
Garner v. State, 864 S.W.2d 92, 98 (Tex. App.CHouston
[1st Dist.] 1993, pet. ref=d)
(indicating that an indigent defendant Amust
accept the counsel appointed by the court@); see
also United States v. Hughey, 147 F.3d 423, 428 (5th Cir. 1998) (relating
that the ASixth Amendment right to counsel
of choice is limited, and protects only a paying defendant=s fair
or reasonable opportunity to obtain counsel of the defendant=s choice@), cert.
denied, 525 U.S. 1030 (1998).  Also,
Texas cases expressing that a defendant=s Sixth
Amendment rights are protected when he has effective assistance from either
retained or appointed counsel weigh against his position.  See Malcom v. State, 628 S.W.2d 790,
791 (Tex. Crim. App. [Panel Op.] 1982) (stating that once Athe
court has appointed an attorney to represent the indigent defendant, the
defendant has been accorded the protections provided under the Sixth and
Fourteenth Amendments@); Montemayor v. State,
55 S.W.3d 78, 88B89 (Tex. App.CAustin
2001, pet. ref=d) (holding that the trial court
properly removed the defendant=s
appointed counsel when the defendant retained other counsel); Ex parte
Williams, 870 S.W.2d 343, 348 (Tex. App.CFort
Worth 1994, pet. ref=d) (reciting that a defendant Ahas the
right to have counsel appointed if retained counsel cannot be obtained@) (quoting
Strickland v. Washington, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063
(1984)); Hazelwood v. State, 838 S.W.2d 647, 649 (Tex. App.CCorpus
Christi 1992, no pet.) (explaining that an accused has the right Ato be
represented by either retained or court‑appointed counsel)
(emphasis added). 








Finally, once a defendant has been found indigent
and has appointed counsel whose services are provided by the state or county,
it would seem counter productive for him to then represent to the court that he
has also managed to secure pro bono counsel. 
The code of criminal procedure provides that only an indigent defendant,
one that is not financially able to employ counsel, is entitled to appointment
of counsel.  Tex._Code Crim. Proc. Ann.
art. 1.051(b), (c) (Vernon Supp. 2008).

        While we have not found any precedent directly addressing a
defendant=s right to pro bono assistance
of counsel at trial when the trial court has appointed other counsel, we
conclude and hold, based on the authority cited above,[14]
that the trial court did not violate appellant=s rights
when it excluded his pro bono counsel from its proceedings.[15]  Therefore, we overrule appellant=s second
point.








Conclusion

Having overruled both of appellant=s
points, we affirm the trial court=s
judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT,
and GARDNER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

GARDNER, J. concurs without opinion.

PUBLISH

 

DELIVERED:  May 7, 2009

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-07-372-CR

 

 

NICHOLAS
TRAMMELL                                                         APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT
COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------

The majority holds that when a court-appointed attorney, on
behalf of an indigent defendant, asks that volunteer counsel be allowed to
participate in the trial without compensation, the Sixth Amendment right to
counsel of the defendant=s choice must give way to the Anext lawyer up@ rules of Athe wheel.@  Because this constitutional protection is
fundamental to due process, I cannot agree that it is trumped by article 26.04
of the code of criminal procedure.  I 

therefore
dissent from the majority opinion.








The United States Supreme Court has recognized that the
right to select counsel of one=s choice is
considered the core meaning of the Sixth Amendment=s guarantee of the
right to counsel.[1]  A trial court=s erroneous
deprivation of this right is structural error and not subject to harmless error
analysis.[2]  It has long been recognized that Athe Sixth
Amendment guarantees a defendant the right to be represented by an otherwise
qualified attorney whom that defendant can afford to hire, or who is willing to
represent the defendant even though he is without funds.@[3] 
Our sister court in Waco has held that a trial court who imposed its own
local rule prohibiting a criminal defendant=s retaining
multiple attorneys, each to handle limited portions of the proceedings, Aabrogate[d] the
constitutional right of defendants to choose counsel . . . .@[4]  








The issue here is whether an indigent defendant is entitled
to the same right to counsel as a defendant who can retain as many lawyers as
he deems necessary.  The issue is not
whether a defendant can demand appointment of his chosen counsel, but whether a
volunteer lawyer can assist appointed counsel pro bono.

The State argues that if Appellant has a volunteer
attorney, he has retained counsel and is not indigent and, therefore, is not
entitled to appointed counsel.  There is
no evidence that the additional attorney=s act of
volunteering to represent Appellant without compensation defeated the trial
court=s prior
determination of indigence.  Nor would
the determination of indigence be defeated if appointed counsel had paid
counsel out of her own funds to assist with Appellant=s case.

The trial court did not base its refusal on the ground that
allowing volunteer counsel to participate would defeat Appellant=s indigent status,
nor did the trial court base its refusal on the ground that allowing volunteer
counsel would delay the trial or impede justice.  Both lawyers were prepared to proceed with
the trial.  The only reason stated by the
trial court for denying Appellant the assistance of volunteer counsel was that
volunteer counsel was not on the wheel.








The trial court has shed light on a very real problem that
trial courts in criminal cases must deal with daily. Trial courts are obligated
to provide appointed counsel to indigent defendants as both a Sixth Amendment guarantee
and a due process protection, but the legislature tells the trial courts how to
do that job.[5]  The trial court is allowed to match the
attorney to the specific case or to the specific defendant only if the
defendant is a non-English speaker or deaf.[6]  Otherwise, the trial court must give every
lawyer a fair shot at the appointments by complying with the legislature=s mandate that 

[a] court shall
appoint an attorney from a public appointment list using a system of rotation,
unless the court appoints an attorney under Subsection (f), (h), or (i).  The court shall appoint attorneys from among
the next five names on the appointment list in the order in which the attorneys= names appear on
the list, unless the court makes a finding of good cause on the record for
appointing an attorney out of order.  An
attorney who is not appointed in the order in which the attorney=s name appears on
the list shall remain next in order on the list.[7]   








The system used to appoint lawyers must Aensure that
appointments are allocated among qualified attorneys in a manner that is fair,
neutral, and nondiscriminatory.@[8] 
The system does not recognize that a lawyer who meets the general
qualifications for felony appointments may not be qualified to handle a
specific kind of case.  Civil
practitioners have long recognized that one size does not fit all.  A lawyer may have many years of experience
handling employment discrimination cases but not have the expertise to handle a
medical malpractice case.  Similarly, a
lawyer may have successfully handled many murder cases but not be confident to
sit first chair in a case that depends on DNA experts.  The trial court is in a better position to
fit the lawyer to the case than is a legislative mandate that seeks to protect
lawyers= access to court
appointment fees.

Here, the trial judge believed that she could not allow
volunteer counsel with thirteen years= experience to
assist a court-appointed lawyer with only eight years= experience
because the volunteer lawyer was not on the wheel.  Although an indigent defendant has no right
to insist that the trial court appoint a specific lawyer,[9]
interpreting the statute to prohibit volunteer co-counsel defeats a defendant=s Sixth Amendment
right to counsel.  The appointed lawyer
did not ask the trial court to appoint the second lawyer; she did not ask to
delay the trial.








The Texas Court of Criminal Appeals has addressed the issue
of volunteer counsel in relation to a volunteer prosecutor.[10]  The court held that the trial court had the
discretion to allow Avolunteer counsel to appear and assist the
state in the prosecution where the prosecuting attorneys were not only present
to conduct the prosecution but entirely able and well qualified to protect
every interest of the state.@[11] 
This discretion is limited when Aappearance of
volunteer counsel could and would operate to prejudice the rights of the
accused or to lead the jury to believe that sentiment was so aroused against
the accused as to cause counsel to volunteer to assist the state.@[12]  In
sum, whether to allow volunteer counsel is within the discretion of the trial
court except when allowing or, I submit, denying the appearance of volunteer
counsel negatively impacts the right of an accused to a fair trial.  The record is clear in the case before us
that the State had two lawyers.  Two
lawyers for the defense was not unreasonable. 


Because Appellant=s Sixth Amendment
right to counsel was abridged by the trial court=s refusal to allow
volunteer counsel based solely on her absence from the wheel, I must
respectfully dissent from the majority=s holding that
Appellant was not allowed the assistance of more experienced volunteer counsel.  Because the trial court=s error is
structural and therefore not subject to harmless error analysis,[13]
I would reverse the trial court=s judgment and
remand this case to the trial court for a new trial. 

 








 

LEE ANN
DAUPHINOT

JUSTICE

 

PUBLISH

DELIVERED:  May 7, 2009        
         

 

 

 

 











[1]Everett testified that
the argument occurred because he interrupted Enzifer=s drug deal.





[2]Enzifer related at trial
that appellant did not reach for the screwdriver until Enzifer Amade him feel threatened.@  He also admitted that he can be scary when he
is angry.  However, he testified that he
did not own a gun at the time of the events relevant to this appeal; Everett=s testimony corroborated
this statement.  Everett said that
appellant did not have any weapon and that instead of a knife, Enzifer had a Alittle shovel or
something.@





[3]Casey testified that
Enzifer was not drinking alcohol or doing drugs during that time and that
Enzifer was acting normally.





[4]Officer Greene testified
that there were pellet holes through Enzifer=s side and that his Aentire triceps was
completely gone, basically.@





[5]Enzifer stayed in the
hospital for four days, where he received treatment that included removing the
shotgun pellets from his abdomen and heart.





[6]Alena and appellant=s father are divorced;
they live at different addresses.





[7]Aggravated assault is
generally a second-degree felony with a punishment range of two to twenty years= confinement.  See Tex. Penal Code Ann. ' 12.33(a) (Vernon
2003), ' 22.02(b).





[8]Although she was
prohibited from sitting at the counsel table, Ms. Johnson continued to observe
the trial proceedings.  Moreover, the
trial judge specifically told appellant=s appointed counsel that although Ms. Johnson
could not Abe at tables,@ Ms. Johnson was not
prohibited from Asitting in here [and]
talking to you.@  [Emphasis added.] 





[9]Appellant also requested
an instruction on necessity.  The trial
court denied the inclusion of this instruction as well, but no issue on appeal
has been raised as to that denial.





[10]Appellant has not
asserted that Enzifer intended to commit any of these offenses.





[11]Because the shooting
occurred in 2006, appellant had a statutory duty to retreat before using deadly
force.  See Davis, 268 S.W.3d at
697 & n.3.  In 2007, the
legislature eliminated language regarding a duty to retreat from the deadly
force self-defense statute, and it affirmatively provided that there is no duty
to retreat when deadly force is otherwise justifiable.  See id.; see also Tex. Penal
Code Ann. ' 9.32(c).





[12]He specifically asserts
violations of his federal constitutional rights and his state constitutional
and statutory rights, contending that the trial court had Ano valid reason for
disallowing said counsel in that no continuance or appointed attorney fees were
requested.@  See U.S. Const. amends. VI, XIV; Tex.
Const. art. I, ' 10; Tex. Code Crim.
Proc. Ann. art. 1.05 (Vernon 2005). 
However, his brief contains only argument related to his federal Sixth
Amendment claim.  Because he has not
briefed his claims related to the other constitutional and statutory provisions
beyond generally citing to those provisions, because his sole complaint at
trial concerned the Sixth Amendment, and because courts have held that these
provisions provide substantially the same rights as the Sixth Amendment, we
will focus only on appellant=s Sixth Amendment claim.  See Hull v. State, 699 S.W.2d 220, 221
(Tex. Crim. App. 1985); Andrade v. State, 246 S.W.3d 217, 223 n.1 (Tex.
App.CHouston [14th Dist.]
2007, pet. ref=d); King v. State,
189 S.W.3d 347, 361 (Tex. App.CFort Worth 2006, no pet.); see also Tex.
R. App. P. 38.1(i).





[13]Specifically, the trial
court required a United States Marshal to sit between appellant=s local counsel and his
desired out-of-state counsel.  Gonzalez-Lopez,
548 U.S. at 143, 126 S. Ct. at 2560.





[14]We also believe that
cases holding that a defendant is not entitled to Ahybrid@ representation of the
defendant himself and the defendant=s counsel, while not fully compatible with the
facts of this case or the legal issues raised by appellant, are instructive as
to our holding.  See Robinson v. State,
240 S.W.3d 919, 921 (Tex. Crim. App. 2007); Fulbright v. State, 41
S.W.3d 228, 235 (Tex. App.CFort Worth 2001, pet. ref=d).





[15]We do not intend to hold
that allowing pro bono counsel to assist appointed counsel is improper.  We also do not hold, contrary to the dissent=s implication otherwise,
that the code of criminal procedure trumps constitutional rights.  See dissenting op. at 1.  We merely conclude that exclusion of Ms.
Johnson as additional counsel did not violate such constitutional rights as
asserted in this appeal.





[1]United States v. Gonzalez‑Lopez, 548 U.S. 140, 147B48, 126 S. Ct. 2557, 2563
(2006). 





[2]Id. at 150, 152, 126 S. Ct.
at 2564, 2566.





[3]Caplin & Drysdale,
Chartered v. United States, 491 U.S. 617, 624B25, 109 S. Ct. 2646, 2652 (1989). 





[4]Kozacki v. Knize, 883 S.W.2d 760, 763
(Tex. App.CWaco 1994, orig.
proceeding).





[5]See Tex. Code Crim. Proc.
Ann. art. 26.04 (Vernon 2009).





[6]Id. art. 26.04(c).





[7]Id. art. 26.04(a).





[8]Id. art. 26.04(b)(6).





[9]See King v. State, 29 S.W.3d 556, 566
(Tex. Crim. App. 2000); Thomas v. State, 550 S.W.2d 64, 68 (Tex. Crim.
App. 1977).





[10]Loshe v. State, 272 S.W.2d 517, 520
(Tex. Crim. App. 1954).





[11]Id.





[12]Id.





[13]See Gonzalez‑Lopez, 548 U.S. at 150, 152,
126 S. Ct. at 2564, 2566.