THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GEORGE RONALD BRIGHAM, Appellee.

*Opinion filed September 24, 1992.*

Roland W. Burris, Attorney General, of Springfield, and James E. Ryan, State's Attorney, of Wheaton (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen, Assistant Attorney General, of Chicago, and Barbara A. Preiner, Assistant State's Attorney, of counsel), for the People.

Josette Skelnik, of Robinson & Skelnik, of Elgin, for appellee.

JUSTICE MORAN delivered the opinion of the court:

George Ronald Brigham (defendant) was convicted, after a jury trial conducted in Du Page County, of vari-

ous counts of unlawful possession of, and possession with intent to deliver, a controlled substance, as well as unlawfully possessing a firearm. (Ill. Rev. Stat. 1985, ch. 56½, pars. 1401(a)(2), 1402(a)(2), 704(d); ch. 38, par. 24—3.1(a)(3).) The appellate court upheld his convictions. (165 Ill. App. 3d 1162 (unpublished order under Supreme Court Rule 23).) Defendant subsequently filed a two-count petition for post-conviction relief in the circuit court (Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*), wherein he alleged that he was denied his constitutional right to counsel as his attorney (Phillip Walker) was not on the master roll of attorneys at the time of his trial. Also, defendant contended that he was denied effective assistance of counsel when his attorney failed to tender jury instructions on a lesser-included offense.

The trial court dismissed defendant's post-conviction petition without an evidentiary hearing, finding that he had waived the issue of Walker's absence from the master roll by failing to raise it on his original direct appeal. Notwithstanding this waiver, the court further concluded that Walker's nonregistration did not result in incompetent representation under *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, the United States Supreme Court case that laid out the two-part test for determining the validity of a claim of ineffective assistance of counsel. However, the appellate court reversed, holding that defendant had not waived consideration of this issue, as the court found that it would be fundamentally unfair to apply the waiver rule to this type of situation. (208 Ill. App. 3d 982.) The appellate court proceeded to review the first issue raised by defendant, finding that his right to counsel under the sixth amendment had been violated, due to Walker's removal from the master roll prior to his representation of defendant. Consequently, the appellate court reversed the judgment of the circuit court, and remanded the

cause for a new trial. Thereafter, this court granted the State's petition for leave to appeal (134 Ill. 2d R. 315).

The relevant facts in this case are undisputed. Defendant's attorney was removed from the master roll on February 1, 1986, after he failed to pay his annual registration dues. Defendant's case was tried in September 1986 by Walker, who withdrew as counsel after the trial was completed and was replaced by attorney Sam Adam. Walker was eventually suspended from the practice of law (for reasons other than his failure to pay his annual dues) on February 4, 1987.

Although the parties have presented two issues to this court for review, we will only address the issue decided by the appellate court, that issue being whether defendant was denied his sixth amendment right to counsel because, unbeknownst to him, his counsel had been removed from the master roll of attorneys for failure to pay his attorney registration dues before he undertook the representation of defendant.

The State first argues that defendant has waived this issue by failing to raise it on his direct appeal to the appellate court. While it is uncontested that defendant's second attorney, Sam Adam, was aware that Walker's name had been removed from the master roll at the time of the direct appeal, defendant himself was not aware of Walker's unregistered status until *after* the appellate court affirmed his convictions. We agree with the appellate court that it would be fundamentally unfair to hold that defendant waived this issue under these specific circumstances. See *People v. Burns* (1979), 75 Ill. 2d 282, 290 (strict application of waiver rule should be relaxed in instances where fundamental fairness so requires, whether on direct appeal or in post-conviction proceedings).

The United States Constitution's sixth amendment provides, in pertinent part:

"In all criminal prosecutions, the accused shall enjoy *** the Assistance of Counsel for his defence." U.S. Const., amend. VI.

Illinois Supreme Court Rule 756 provides, in pertinent part, the following:

"(b) The Master Roll. The Administrator shall prepare a master roll of attorneys consisting of the names of attorneys who have registered and have paid or are exempt from paying the registration fee. The Administrator shall maintain the master roll in a current status. At all times a copy of the master roll shall be on file in the office of the clerk of the court. An attorney who is not listed on the master roll is not entitled to practice law or to hold himself out as authorized to practice law in this State.
***

(d) Removal from the Master Roll. On February 1 of each year the Administrator shall remove from the master roll the name of any person who has not registered for that year. Any person whose name is not on the master roll and who practices law or who holds himself out as being authorized to practice law in this State is engaged in the unauthorized practice of law and may also be held in contempt of the court.

(e) Reinstatement to the Master Roll. An attorney whose name has been removed from the master roll solely for failure to register and pay the registration fee may be reinstated as a matter of course upon registering and paying the registration fee prescribed for the period of his suspension, plus the sum of $10 per month for each month that such registration fee is delinquent." 134 Ill. 2d Rules 756(b), (d), (e).

Although we are faced with an issue of first impression before this court, there have been two recent cases with similar fact patterns before the Illinois appellate court, namely *People v. Elvart* (1989), 189 Ill. App. 3d 524, and *People v. Schlaiss* (1988), 174 Ill. App. 3d 78.

In *Elvart*, the defendant argued that he was denied the effective assistance of counsel because, *inter alia*,

his trial counsel was not a registered attorney in Illinois. The appellate court disagreed, holding that the *Strickland* test was not satisfied "by a mere showing that defense counsel was removed from the Master Roll of Attorneys for failing to pay his registration fee." (*Elvart*, 189 Ill. App. 3d at 529.) That court noted that Supreme Court Rule 756 does not suggest that the nonpayment of fees renders an attorney *per se* constitutionally ineffective. *Elvart*, 189 Ill. App. 3d at 530.

In *Schlaiss*, the defendant was represented by a law student pursuant to Supreme Court Rule 711 (134 Ill. 2d R. 711). However, defendant did not consent in writing to be represented by the law student, in violation of Supreme Court Rule 711(c) (134 Ill. 2d R. 711(c)). That court reversed the defendant's conviction for battery, stating that "[b]ecause the conditions necessary for [the law student's] representation of [the defendant] were not met, he cannot be considered 'counsel' for constitutional purposes." (*Schlaiss*, 174 Ill. App. 3d at 81.) Thus, the court held that defendant was denied his right to counsel as guaranteed by the sixth amendment to the United States Constitution. *Schlaiss*, 174 Ill. App. 3d at 81-82, citing *Holloway v. Arkansas* (1978), 435 U.S. 475, 489, 55 L. Ed. 2d 426, 437-38, 98 S. Ct. 1173, 1181.

The State, aside from relying on the rationale of *Elvart* and distinguishing *Schlaiss*, based upon the fact that Schlaiss' "counsel" was not an attorney, had never been an attorney, and therefore never had his competence certified, believes that the appellate court erred in hinging a sixth amendment analysis on Rule 756. The State believes that it simply does not follow that failure to satisfy technical licensing requirements always destroys one's status as counsel. The constitutional question is *not* whether an attorney pays his registration fee on time but, rather, whether the defendant received the effective assistance of counsel. The State argues that the

representation by an attorney, previously qualified and in good standing, who is suspended or temporarily stricken from the attorney roll, simply does not, without more of a showing, become constitutionally ineffective.

The State further argues that Supreme Court Rule 756 should not be construed so as to void an otherwise valid judgment, contending that the most capable and conscientious of attorneys might, through oversight, neglect to pay his registration fee in a timely manner. Such a shortcoming does not render his advice ill or his representation ineffective. To support that proposition one need look no further than the rule's own provision that the attorney will have his name returned to the master roll upon payment of the fee and any penalties thereon.

The defendant, on the other hand, initially notes that Walker was eventually suspended from the practice of law on February 4, 1987, for failure to respond to two subpoenas *duces tecum* issued by the Attorney Registration and Disciplinary Commission, and that this suspension has never been lifted. We conclude that this fact is irrelevant for purposes of our discussion, since we are focusing upon the facts as they existed at the time of the defendant's trial.

Although the present issue is one of first impression for this court, other jurisdictions have dealt with it on numerous occasions, almost unanimously concluding that an attorney whose license has been suspended for failure to pay his dues still may be "counsel" for sixth amendment purposes. *Reese v. Peters* (7th Cir. 1991), 926 F.2d 668; *United States v. Mouzin* (9th Cir. 1986), 785 F.2d 682; *United States v. Hoffman* (9th Cir. 1984), 733 F.2d 596; *Beto v. Barfield* (5th Cir. 1968), 391 F.2d 275; *People v. Medler* (1986), 177 Cal. App. 3d 927, 223 Cal. Rptr. 401; *People v. Garcia* (1983), 147 Cal. App. 3d 409, 195 Cal. Rptr. 138; *Dolan v. State* (Fla. App. 1985), 469 So. 2d 142; *White v. State* (Fla. App. 1985), 464 So. 2d

185; *Johnson v. State* (1979), 225 Kan. 458, 590 P.2d 1082; *State v. Smith* (Minn. 1991), 476 N.W.2d 511; *Jones v. State* (Mo. App. 1988), 747 S.W.2d 651; *Hill v. State* (Tex. Crim. App. 1965), 393 S.W.2d 901.

Of particular relevance to this case is *Reese*, 926 F.2d 668, which commenced in the Illinois circuit court and eventually made its way into Federal court on a *habeas corpus* petition. As in this case, the defendant claimed that his representation at trial by a lawyer who had been suspended from the master roll is an automatic violation of his sixth amendment rights. In *Reese*, defendant's attorney had neglected to pay his annual dues; therefore, the State suspended his license in accordance with Rule 756(d) (134 Ill. 2d 756(d)). Consequently, the attorney's practice of law after the suspension was unauthorized.

In *Reese*, the Seventh Circuit concluded that the defendant was not denied his constitutional right to counsel. In determining what "counsel" means for constitutional purposes, that court logically referred back in time to when the Bill of Rights was enacted. According to the Seventh Circuit:

> " 'Counsel' in 1791 meant a person deemed by the court fit to act as another's legal representative and inscribed on the list of attorneys. See §35 of the Judiciary Act of 1789. There were no bar exams, no unified bars, no annual dues, no formal qualifications. Although there were a handful of law schools, none was accredited by the ABA (there was no ABA), and few students completed the program. John Marshall dropped out of law school after a few months of study. Leonard Baker, *John Marshall: A Life in Law* 61-66 (1974). Would-be lawyers earned the right to practice through apprenticeship, appearing in court under the tutelage of a practitioner until they satisfied the presiding judge that they could handle cases independently. Part of that tradition survives in the practice of admission *pro hac vice*. Courts grant motions allowing representation by persons who do not belong to

their bars. Usually the person admitted *pro hac vice* belongs to *some* bar, but it may be the bar of a distant state or foreign nation. The enduring practice of admission *pro hac vice* demonstrates that there is no one-to-one correspondence between 'Counsel' and membership in the local bar.

The *constitutional* question is whether the court has satisfied itself of the advocate's competence and authorized him to practice law. *** [P]ersons who obtain credentials by fraud *** are classes apart from persons who satisfied the court of their legal skills but later ran afoul of some technical rule. Lawyers who do not pay their dues violate a legal norm, but not one established for the protection of clients; suspensions used to wring money from lawyers' pockets do not stem from any doubt about their ability to furnish zealous and effective assistance. [Defendant's representative at trial] may well have belonged to the bar of a federal district court *** and his failure to pay his state dues would not have produced automatic suspension from the federal bar. (*In re Ruffalo*, 390 U.S. 544, 88 S. Ct. 1222, 20 L. Ed. 2d 117 (1968).) *** Federal courts do not collect annual dues, and a state may not hold membership in the federal bar hostage to extract its own tribute.

It would make no sense to say that [defendant's representative] could furnish 'Counsel' *** in a federal prosecution, to which the sixth amendment applies directly, but not in a state prosecution, to which the sixth amendment applies only by its absorption through the due process clause of the fourteenth. *** What matters for constitutional purposes is that the legal representative was enrolled after the court concluded that he was fit to render legal assistance." (Emphasis in original.) *Reese*, 926 F.2d at 669-70.

Although this court is not bound by the holding of *Reese*, we do find it persuasive. Another decision which we find particularly instructive is *Johnson v. State* (1979), 225 Kan. 458, 590 P.2d 1082. In *Johnson*, the Kansas Supreme Court was faced with an almost identi-

cal fact situation as we have here. Furthermore, its supreme court rules dealing with attorney registration and suspension for failure to register, Rule 208, is very similar to Illinois' rule. That court held:

"In spite of his suspension, we cannot say as a matter of law that [defendant's representative at trial] was unable to represent effectively the [defendant] during the period of his suspension. Although the payment of the registration fee is a prerequisite to the ethical practice of law in this state, the payment itself has nothing to do with the legal ability of the attorney. *Just as the payment of the fee does not guarantee that an attorney will practice law in a competent manner, the nonpayment of the fee does not necessarily imply that the nonpaying attorney will perform in an incompetent manner.* In each instance, we must examine the actual representation afforded the accused person. In so doing, this court is obligated to *** look to the substance of the representation in discerning the competency or incompetency of the representation by the attorney." (Emphasis added.) *Johnson*, 225 Kan. at 465, 590 P.2d at 1087.

Finally, in *Hill v. State* (Tex. Crim. App. 1965), 393 S.W.2d 901, that court perceptively noted:

"The status of a delinquent attorney not being a member of the State Bar *** does not place him in the position of being 'unlicensed to practice law in this state'. [Although he is *prohibited* from practicing law in this state'] *[h]e only has to pay his dues* (he does not vacate the office of Attorney-at-Law) to resume his status as a 'practicing lawyer'. Such attorney does not have to again show his fitness or qualifications to practice law. He does not have to be re-admitted to the practice. His competency as an attorney has not been diminished. He faces no future disbarment proceedings. He automatically resumes his status as an active member of the State Bar ***. The payment of his delinquent dues has the same effect for him as a nunc pro tunc judgment. He, in effect, enters a nunc pro tunc judgment for himself." (Emphasis in original.) *Hill*, 393 S.W.2d at 904.

In many of these previously mentioned cases relied upon by the State, the courts have noted an important distinction between (1) an unlicensed person (*e.g.*, an imposter or a disbarred attorney), and (2) an attorney admitted to practice but under suspension for nonpayment of State bar dues. Overwhelmingly, they hold that representation by members of the former category constitutes denial of defendant's right to counsel, whereas representation by members of the latter category does not.

Defendant, on the other hand, points out that some courts have held that a defendant has been denied his right to counsel because his representative was not licensed to practice law before that particular court. However, those cases are easily distinguishable from the present one. Generally, those decisions involved situations where the representative has either failed to obtain a law license, has obtained a license through fraudulent means, or has had his license revoked for reasons to do with his competency as an attorney.

For example, in *Solina v. United States* (2d Cir. 1983), 709 F.2d 160, the defendant had been represented by Walter T. Coleman, who, although possessing a law degree from an accredited law school, had not passed the New York State bar examination, nor was he a member of any other bar. This fact was not known to the defendant at the time of his trial, but when he subsequently became aware of it, he filed a petition for *habeas corpus* relief. At that proceeding, the Federal district court, while recognizing that, under the circumstances in question, the defendant had neither "enjoyed nor waived the 'assistance of counsel' to which he was entitled under the Sixth Amendment," nevertheless held that the defendant was not entitled to any relief because he had not been prejudiced by Coleman's status as an unlicensed attorney. While the Second Circuit agreed with

the district court that no prejudice had been shown (and also agreed that no defense attorney, regardless of his or her degree of competence, could likely have prevailed in defendant's case), it disagreed that a harmless error analysis could be applied in the circumstances of that case. Since the defendant had been denied his constitutional right to counsel by having been represented by an unlicensed attorney, the court found that *per se* reversible error had occurred.

Nevertheless, in holding as such, the court went on to state:

> "In so construing the original understanding of the term 'counsel' we do not intimate that any technical defect in the licensed status of a defendant's representative would amount to a violation of the Sixth Amendment. We limit our decision in this case to situations where, unbeknown to the defendant, his representative was not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character [citation]." *Solina*, 709 F.2d at 167.

There is additional case law supporting the conclusion that a defendant is denied his right to counsel in situations similar to *Solina*, but distinguishable from the case at bar. See *United States v. Novak* (2d Cir. 1990), 903 F.2d 883 (representation at trial by an individual who had obtained admission to the bar through fraudulent means was *per se* insufficient to satisfy the sixth amendment); *People v. Hinkley* (1987), 193 Cal. App. 3d 383, 238 Cal. Rptr. 272 (court held that defendant was denied assistance of counsel where his representative was suspended due to his (1) nonpayment of fees *and* (2) enrollment as an inactive member of the State bar of California pursuant to section 6007(b) of the California Business and Professions Code, which restricts the practice of at-

torneys who have become incompetent to represent clients).

Another case relied upon by defendant is *People v. Brewer* (1979), 88 Mich. App. 756, 279 N.W.2d 307, where a defendant alleged that his attorney had been suspended for nonpayment of dues at the time he was representing him. There, the court recognized "that the failure of an attorney to remit his state bar dues is strong evidence that such attorney is no longer sufficiently interested in the practice of law to adequately defend his client's interest." (*Brewer*, 88 Mich. App. at 762, 279 N.W.2d at 309.) Therefore, the court remanded the cause for an evidentiary hearing to determine whether the defendant's unsupported allegation was in fact true, and if so, to determine its effect upon the defendant's conviction. However, in doing so, the court noted:

> "While we recognize that the constitutional guarantee of the right to effective assistance of counsel deserves the utmost protection, we disagree with the contention that defendant's retained attorney's suspension for failure to pay dues automatically necessitates the reversal of defendant's conviction. The instant case is not a matter of a 'layman masquerading as a lawyer' \*\*\*." *Brewer*, 88 Mich. App. at 761-62, 279 N.W.2d at 309.

Finally, defendant relies on *Huckelbury v. State* (Fla. App. 1976), 337 So. 2d 400, where Huckelbury, who was charged in Florida with first degree murder and conspiracy to commit murder, was represented by Lawrence Pearce of the public defender's office. While actively representing the defendant, Pearce conducted negotiations with the State's Attorney's office which resulted in an agreement that, in exchange for the defendant's guilty plea to murder, the State would waive the death penalty and would nol-pros the conspiracy charge. The defendant thereafter entered a plea of guilty to murder

and was sentenced to life imprisonment. Subsequent to the entry of his plea, the defendant learned that Pearce was not a qualified member of the Florida bar. Although Pearce had graduated from an accredited law school and had received a passing grade on the State bar examination, the Board of Bar Examiners refused to admit him to the bar because it found him to be lacking good moral character.

After learning this information, the defendant filed a petition to revoke his guilty plea on the basis of lack of representation by qualified counsel. Following a hearing, the trial court denied the petition, finding that Pearce had provided the defendant competent representation. However, the Court of Appeals reversed, finding that the defendant was "entitled to be advised and represented at every critical stage of the case by counsel certified by the State to be competent and of good moral standing," and held that, under that standard, Pearce did not qualify as counsel. Notwithstanding its decision, the court emphasized:

> "[W]e are not here dealing with a person who merely failed to comply with some administrative requirement prerequisite to membership in the Florida Bar. Rather, we are dealing with a situation where one without proper credentials as a lawyer in any state or federal jurisdiction posed as a lawyer." *Huckelbury*, 337 So. 2d at 403.

As a result of the overwhelming support for the State's position, as seen by an analysis of the previously discussed out-of-state authority, we hold that defendant was not automatically deprived of his sixth amendment right to counsel because Walker acted as his representative. Walker's admission to the bar allows us to assume that he has the training, knowledge, and ability to represent a client who has chosen him, and that he has retained the ability to render effective assistance to defendant at trial, notwithstanding his suspension for

failure to pay his registration dues. To find a defendant's sixth amendment right to counsel to have been violated, there must be additional factors above and beyond a mere suspension for nonpayment of bar dues.

For the reasons set forth above, the judgment of the appellate court is reversed. As the appellate court reversed the trial court without addressing the second issue raised by defendant, the cause is remanded to the appellate court for consideration of that issue.

*Appellate court judgment reversed;*
*cause remanded.*