**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Lamar JONES, Appellant.**

Superior Court of Pennsylvania.

Submitted April 21, 2003.

Filed July 14, 2003.

Sue A. Pfadt, Erie, for appellant.

Bradley H. Foulk, Asst. Dist. Atty., Erie, for Com., appellant.

Before: BOWES, GRACI, and KELLY, JJ.

GRACI, J.

¶ 1 Appellant, Lamar Jones ("Jones"), appeals from the judgment of sentence entered on May 14, 2002, in the Court of Common Pleas of Erie County, sentencing him to nine to thirty-five months imprisonment. After careful review, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 In its Pa.R.A.P.1925(a) opinion, the trial court provided the background of this case as follows:

Appellant's attorney, Gustee Brown, Esq. was placed on inactive status by the Pennsylvania Supreme Court effective November 30, 2000 for failing to pay the annual fee required by Pa. R.D.E. 219. On May 14, 2002 Brown was still on inactive status when he represented Appellant at a jury trial. A jury found Appellant guilty of Possession of Cocaine (Count 1), a misdemeanor and Resisting Arrest (Count 3), a misdemeanor. The jury found Appellant *not* guilty of Possession of Cocaine with Intent to Distribute (a felony). The charges stem from Appellant's possession of approximately ten (10) rocks of cocaine and his attempt to flee from and fight with three Erie Police Department Officers on November 13, 2001 at the corner of West 16th and Plum Streets in Erie, Pennsylvania.

On June 26, 2002 Appellant was sentenced to six (6) months to twenty-three (23) months incarceration for Resisting Arrest consecutive to the state revocation sentence at Docket Number 1680 of 1989 and three (3) months to twelve (12) months incarceration for Possession of cocaine (Count 1) consecutive to Count 3. Mr. Brown's license to practice law was reinstated to active status on July 1, 2002 after paying the appropriate fees.

1925(a) Opinion, 12/17/02, at 1–2.

¶ 3 On August 19, 2002, Jones filed a petition for collateral relief, see 42 Pa. C.S.A. §§ 9541–9546, arguing that he was denied his right to counsel since Attorney Brown was on inactive status when he represented Jones. On August 22, 2002, the trial court ordered that Jones' right to file a direct appeal be reinstated *nunc pro tunc.* Jones then filed a notice of appeal.

¶ 4 On September 23, 2002, the trial court ordered Jones to file a Pa.R.A.P. 1925(b) statement. In his Pa.R.A.P. 1925(b) statement, Jones contended that he was denied his right to counsel since Attorney Brown was on inactive status when he represented Jones. On December 17, 2002, the trial court filed a Pa. R.A.P.1925(a) opinion, stating that Jones' appeal should be denied.

¶ 5 Jones now presents the following issue for our review:

A. Whether the appellant was denied his Sixth Amendment right to assistance of counsel where his attorney at the time of representation at trial was suspended from the practice of law.

. . .

Appellant's Brief, at 3.[1]

## II. DISCUSSION

¶ 6 The Sixth Amendment provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy ... the Assistance of Counsel for his defence." U.S. Const. amend. VI.

¶ 7 Moreover, the Pennsylvania Rules of Disciplinary Enforcement provide, in pertinent part:

(a) Every attorney admitted to practice in any court of this Commonwealth shall pay an annual fee of $130.00 under this rule. The annual fee shall be collected under the supervision of [The Administrative Office of Pennsylvania Courts ("Administrative Office")], which shall send and receive, or cause to be sent and received, the notices and statements provided for in this rule. The said fee shall be used to defray the costs of disciplinary administration and enforcement under these rules, and for such other purposes as the [Disciplinary Board of the Supreme Court of Pennsylvania ("Board")] shall, with the approval of the Supreme Court, from time to time determine.

. . .

(f) The Administrative Office shall transmit by certified mail, return receipt requested, to every attorney who fails to timely ... pay the annual fee required by this rule, addressed to the last known address of the attorney, a notice stating:

(1) That unless the attorney shall comply with ... this rule within 30 days after the date of the notice, such failure to comply will be deemed a request for transfer to inactive status, and at the end of such period the name of the attorney will be certified to the Supreme Court, which will immediately enter an order transferring the attorney to inactive status.

(2) That upon the entry of the order transferring the attorney to inactive status the attorney shall comply with Enforcement Rule 217 (relating to formerly admitted attorneys), a copy of which shall be enclosed with the notice.

(g) The Administrative Office or the Board shall certify to the Supreme Court the names of every attorney who has failed to respond to a notice issued pursuant to ... this rule ... and the Court shall immediately enter an order transferring the attorney to inactive status. A copy of any such certification from the Administrative Office to the Supreme Court shall be given to the Board.

Pa.R.D.E. 219. An inactive attorney who practices law or who holds himself out as being authorized to practice law in Pennsylvania is engaged in the unauthorized practice of law. Pa.R.D.E. 217. "No attorney ... transferred to inactive status more than three years prior to resumption of practice ... may resume practice until reinstated by order of the Supreme Court after petition therefor." Pa.R.D.E. 218(a). Attorneys who have been on inactive status for three years or less may be reinstated by filing with the Administrative Office the annual fee, a signed statement on the form prescribed by the Administrative Office, and payment of all arrears due from the date to which the attorney was last paid. Pa.R.D.E. 218(g) and 219(h) and (j).

¶ 8 Although we are faced with an issue of first impression before this Court, *Commonwealth v. Vance*, 376 Pa.Super. 493, 546 A.2d 632 (1988), had a similar fact

---

**1.** Jones does not argue that his counsel's performance was deficient. Appellant's Brief, at

7.

pattern. In *Vance*, we were confronted with the question of whether a defendant was denied the effective assistance of counsel where the Pennsylvania Supreme Court revoked counsel's admission to the state bar after trial. Before rejecting the defendant's ineffectiveness claim, we noted that "there is nothing in the law that states a grant of a petition to revoke admission to the bar is equivalent to a person never having been a member of the bar." *Id.* at 636. Moreover, "[e]ven where an attorney has already been disbarred at the time he represents a defendant in a criminal trial, there is no *per se* rule that the defendant has not been represented by counsel." *Id.* at 637. We then concluded that:

> the defendant was at all times during the course of his trial and sentencing procedure represented by a member of the bar. The fact that his counsel's admission to the bar was subsequently revoked for activities not related to his conduct at trial does not mean that he was unrepresented by counsel at trial.

*Id.*

¶ 9 Our rejection of this Sixth Amendment claim advanced by the appellant in *Vance* was upheld (and ratified) by the United States Court of Appeals for the Third Circuit when it affirmed the denial of federal habeas corpus relief on this Sixth Amendment claim brought by the appellant in *Vance. See Vance v. Lehman,* 64 F.3d 119 (3d Cir.1995). There, the court stated:

> The right to the effective assistance of counsel is . . . the right of the accused to require the prosecution's case to sur-

vive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. . . If the defendant has no representation of any kind, his conviction is *per se* invalid. The same is true if, for any reason, the defendant's counsel is prevented from assisting him during a critical stage of the proceeding. "Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing [by foregoing cross-examination of the prosecutor's witnesses], then there has been a denial of the Sixth Amendment rights that makes the adversary process itself presumptively unreliable." Another situation which would warrant the application of a *per se* rule finding a violation of the Sixth Amendment is where the defendant is represented by someone with little or no legal training who is masquerading as an attorney.

*Id.* at 122 (quotations and citations omitted). The situations where a *per se* rule might be invoked are not present here.[2]

¶ 10 Although the present issue is one of first impression for this Court, other jurisdictions have dealt with it on numerous occasions, almost unanimously concluding that an attorney whose license has been suspended for failure to pay his dues still may be "counsel" for Sixth Amendment purposes. *People v. Brigham,* 151 Ill.2d 58, 175 Ill.Dec. 720, 600 N.E.2d 1178, 1181 (1992) (citing *Reese v. Peters,* 926 F.2d 668

---

**2.** We note that in reaching our conclusion in *Vance* that there was no *per se* denial of counsel where counsel was disbarred *after* trial we observed that "[e]ven where an attorney has already been disbarred at the time he represents a defendant in a criminal trial, there is no *per se* rule that the defendant has not been represented by counsel." *Commonwealth v. Vance,* 546 A.2d at 637. Though this observation led to our conclusion, it was not part of our holding. We leave for another day the question of whether there is *per se* denial of counsel where counsel is disbarred *before* trial.

(7th Cir.1991); *United States v. Mouzin,* 785 F.2d 682 (9th Cir.1986); *United States v. Hoffman,* 733 F.2d 596 (9th Cir.1984); *Beto v. Barfield,* 391 F.2d 275 (5th Cir. 1968); *People v. Medler,* 177 Cal.App.3d 927, 223 Cal.Rptr. 401 (1986); *People v. Garcia,* 147 Cal.App.3d 409, 195 Cal.Rptr. 138 (1983); *Dolan v. State,* 469 So.2d 142 (Fla.App.1985); *White v. State,* 464 So.2d 185 (Fla.App.1985); *Johnson v. State,* 225 Kan. 458, 590 P.2d 1082 (1979); *State v. Smith,* 476 N.W.2d 511 (Minn.1991); *Jones v. State,* 747 S.W.2d 651 (Mo.App.1988); and *Hill v. State,* 393 S.W.2d 901 (Tex. Crim.App.1965)).

¶ 11 We find *Brigham, supra,* particularly instructive. In *Brigham,* the Illinois Supreme Court was faced with a fact situation almost identical to the situation presently before us. Moreover, the Illinois disciplinary rules regarding attorney registration and suspension for failure to register (as they existed when *Brigham* was decided), 134 Il. Supreme Court Rule 756(b), (d), and (e) (amended June 29, 1999, effective November 1, 1999), are similar to Pennsylvania's rules. The *Brigham* court held:

> [Appellant's] admission to the bar allows us to assume that he has the training, knowledge, and ability to represent a client who has chosen him, and that he has retained the ability to render effective assistance to defendant at trial, notwithstanding his suspension for failure to pay his registration dues. To find a defendant's [S]ixth [A]mendment right to counsel to have been violated, there must be additional factors above and beyond a mere suspension for nonpayment of bar dues.

*Brigham,* 175 Ill.Dec. 720, 600 N.E.2d at 1184–85.

¶ 12 In *Hill, supra,* the Texas Court of Criminal Appeals perceptively noted:

> The status of a delinquent attorney not being a member of the State Bar ... does not place him in the position of being 'unlicensed to practice law in this State'. *He only has to pay his dues* (he does not vacate the office of Attorney–at–Law) to resume his status as a 'practicing lawyer'. Such attorney does not have to again show his fitness or qualifications to practice law. He does not have to be re-admitted to the practice. His competency as an attorney has not been diminished. He faces no future disbarment proceedings. He automatically resumes his status as an active member of the State Bar.... The payment of his delinquent dues has the same effect for him as a nunc pro tunc judgment. He, in effect, enters a nunc pro tunc judgment for himself.

*Hill,* 393 S.W.2d at 904 (citation omitted) (emphasis in original).

¶ 13 Jones relies on *Ex parte Williams,* 870 S.W.2d 343 (Tex.App.1994), where counsel was disbarred nearly two months before the trial began. However, as the *Williams* court indicated, that case can easily be distinguished from *Hill, supra. Id.* at 348 (distinguishing *Hill* ). Just as in *Hill,* and different from the situation in *Williams,* the attorney here was never disbarred. Accordingly, since the issue in *Williams* is not before this Court, we find that *Williams* is inapplicable.

### III. CONCLUSION

¶ 14 Our analysis of the previously discussed out-of-state authority reveals overwhelming support for the argument presented by the Commonwealth. We are persuaded that the rationale of our sister courts is sound and that Jones would have to present us with factors additional to his attorney's transfer to inactive status in the State Bar for nonpayment of dues in order for us to find that he was deprived of his

Sixth Amendment right to counsel. He has not, and, therefore, his argument fails.

¶ 15 Judgment of sentence affirmed.