Docket No. 105905.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

MICHAEL APPLEBAUM, Special Adm'r of the Estate of Joseph Applebaum, Deceased, Appellant, v. RUSH UNIVERSITY MEDICAL CENTER *et al.*, Appellees.

*Opinion filed November 20, 2008.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

Chief Justice Fitzgerald took no part in the decision.

## OPINION

The circuit court of Cook County certified the following question of law for interlocutory appeal, pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)):

> "Whether the nullity rule should be applied in a wrongful death action where the plaintiff is an attorney who has passed the bar and was on inactive status at the time of the filing of the complaint, was the special administrator, sole benficiary and son of the decedent and prior to the hearing on the motion whose license was reinstated."

The appellate court answered this question in the affirmative. 376 Ill. App. 3d 993. We granted leave to appeal (210 Ill. 2d R. 315). For the reasons that follow, we answer the certified question in the negative. Accordingly, we reverse the judgment of the appellate court and remand this cause to the circuit court for further proceedings consistent with this opinion.

BACKGROUND

This interlocutory appeal has its genesis in a medical malpractice complaint filed on December 1, 2005, in the circuit court of Cook County. Plaintiff, Michael Applebaum, filed suit as special administrator of the estate of Joseph Applebaum, against Rush University Medical Center and other defendants,[1] seeking damages for the estate pursuant to the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2004)) and the Survival Act (755 ILCS 5/27–6 (West 2004)), stemming from defendants' alleged misconduct in treating decedent. Plaintiff is decedent's only child and the sole beneficiary of his estate, which had no creditors and was not opened to probate. Plaintiff's complaint and the damages it sought, however, were solely in the name of the estate and not pled individually for plaintiff.

Plaintiff signed the complaint as "Attorney for Plaintiff." The record reveals that plaintiff is a physician who received an Illinois license to practice law in 1988. The Attorney Registration and Disciplinary Commission (ARDC) has no record of plaintiff ever having been disciplined or being the subject of a public disciplinary proceeding. Plaintiff remained on "active" status with the ARDC until January 6, 2005, when, pursuant to our Rule 756(a)(5) (188 Ill.

---

[1]The initial appellees in this case who filed a responsive brief to plaintiff's opening brief were Rush University Medical Center, individually and d/b/a University Rheumatologists and Rush Medical College, Lawrence Layfer, M.D., and Osama Ibrahim, M.D. Subsequently, this court has allowed the motions of the following defendants to join this brief: Rush North Shore Medical Center; Vadim Leyenson and Chest Medical Consultants, S.C.; North Shore Radiology; Leonard Berlin, M.D.; Gary Novetsky, M.D.; Mark Edelman, M.D.; Michael Racenstein, M.D.; Avrum Epstein, M.D.; Michael Smith, M.D.; Jonathan Alexander, M.D.; Christian Fisher, M.D.; Jose Velasco, M.D.; Alan Reich, M.D.

-2-

2d R. 756(a)(5)), he voluntarily changed his registration to that of an "inactive status attorney." This change in status occurred nearly one year prior to the filing of the medical malpractice complaint.

On April 4, 2006, plaintiff filed a first amended complaint in the medical malpractice action, adding additional counts. Plaintiff, however, signed this document as "Plaintiff Pro Se." Defendants thereafter filed, on May 31, 2006, a pleading styled "Motion to Dismiss Based on the Plaintiff's Unlicensed Practice of Law," resulting from their discovery that plaintiff–although an attorney–was on inactive status at the time he filed the initial complaint. Defendants maintained that "one not duly authorized to practice law may not represent another in a court of law" and argued that, because plaintiff was on inactive status with the ARDC, he was "not legally permitted to bring this litigation in a representative capacity on behalf of the estate of [decedent]." Defendants concluded, therefore, that "this matter must be declared a nullity and dismissed with prejudice."

The record reflects the parties' agreement that, sometime subsequent to the filing of defendants' dismissal motion–yet prior to the trial court's hearing of this matter on August 17, 2006–plaintiff returned to "active" status with the ARDC.

Upon conclusion of the August 17 hearing, the trial court denied defendants' motion to dismiss. The court agreed with defendants that plaintiff's inactive status precluded him from representing the estate and that, generally, legal proceedings brought by a nonlawyer on behalf of another may be voided under the nullity rule. The trial court, however, disagreed with defendants that this case required application of the nullity rule. Noting that the purpose of the nullity rule is to protect the public against unskilled and unscrupulous persons representing them in legal proceedings, the trial court found that the instant medical malpractice action filed by plaintiff–who has a law degree, who has been duly licensed in Illinois and never disciplined, who had resumed active status with the ARDC prior to the dismissal hearing, and who sought redress through this suit for alleged harm suffered by his father–did not present any of the concerns intended to be remedied by application of that rule. In addition, the court was troubled by the fact that applying the nullity rule and dismissing the action would foreclose any possibility of recourse for decedent's alleged injuries. Accordingly, the trial court refused to apply the

nullity rule and denied defendants' motion to dismiss. The court did direct plaintiff, however, to file an amended complaint reflecting his current status as an active attorney. Plaintiff complied by filing a second amended complaint on August 28, 2006.

Defendants thereafter filed a "Motion for Rule 308 Finding," requesting that the trial court certify a question of law for immediate interlocutory appeal pursuant to our Rule 308. The trial court agreed with defendants that its prior order denying their dismissal motion involved a question of law as to which there is a substantial ground of difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the litigation. Accordingly, the trial court certified its question for interlocutory appeal.

In applying the nullity rule and reversing the actions of the circuit court, the appellate court held:

> "Where a plaintiff proceeding *pro se* was formerly licensed to practice law, but is voluntarily on inactive status pursuant to Illinois Supreme Court Rule 756(a)(5) [citation] at the time of the filing of a complaint under the Wrongful Death Act, he or she is not authorized to practice law and the nullity rule applies even though plaintiff returned to active status prior to a hearing on a motion to dismiss the complaint as a nullity." 376 Ill. App. 3d at 993.

In arriving at this conclusion, the appellate court relied principally upon *Fruin v. Northwestern Medical Faculty Foundation, Inc.*, 194 Ill. App. 3d 1061 (1990), which upheld the dismissal of a medical malpractice complaint based upon the nullity rule, where that complaint was signed and filed by an attorney located and licensed only in Wisconsin. The appellate court held that *Fruin* was factually analogous to the instant matter, as plaintiff "was not licensed" in Illinois, yet, nevertheless, filed a complaint "in violation of the plain letter of the law." 376 Ill. App. 3d at 999. Although the court acknowledged that "[t]here is no doubt that the nullity rule is harsh," it noted that "the law is clear that only a licensed attorney may represent another party" (376 Ill. App. 3d at 999), and held that "there are no unique circumstances present to justify a deviation from the rule" (376 Ill. App. 3d at 1000).

This court allowed plaintiff's petition for leave to appeal. 210 Ill. 2d R. 315. We also allowed the Illinois Trial Lawyers Association leave to file a brief *amicus curiae*. 210 Ill. 2d R. 345.

## ANALYSIS

The certified question requires us to determine whether the application of the nullity rule is appropriate under the facts presented in this case. In *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371 (2005), we recently explained that the nullity–or voidness–rule

> "is grounded in the fact that there are risks to individual clients and to the integrity of the legal system inherent in representation by an unlicensed person: The purpose of the nullity 'rule is *** to protect litigants against the mistakes of the ignorant and the schemes of the unscrupulous and to protect the court itself in the administration of its proceedings from those lacking requisite skills.' " *Sperry*, 214 Ill. 2d at 389-90, quoting *Janiczek v. Dover Management Co.*, 134 Ill. App. 3d 543, 546 (1985).

Accordingly, where a person who is not licensed to practice law in Illinois attempts to represent another party in legal proceedings, this rule permits dismissal of the cause, thereby treating the particular actions taken by that person as a nullity. *Sperry*, 214 Ill. 2d at 390. Although the nullity rule is well established in our courts, because the results of its application are harsh it should be invoked only where it fulfills its purposes of protecting both the public and the integrity of the court system from the actions of the unlicensed, and where no other alternative remedy is possible. See *Sperry*, 214 Ill. 2d at 380, 390-91; see also, *e.g.*, *Pratt-Holdampf v. Trinity Medical Center*, 338 Ill. App. 3d 1079, 1085 (2003) (complaint improperly dismissed under the nullity rule where "risks to individual clients and to the integrity of the legal system inherent in representation by a person who has never qualified to practice law" not present); *Ratcliffe v. Apantaku*, 318 Ill. App. 3d 621, 626 (2000) (voiding a wrongful-death and survival action brought in a representative capacity by a *pro se* plaintiff who was a layperson and not an attorney licensed to practice law).

This case presents the specific question of whether it is proper to apply the nullity rule to void a complaint filed by a licensed attorney who, at the time of filing, was on "inactive attorney status" with the ARDC, and who is representing the estate of his deceased father, is the estate's special administrator, and is the sole beneficiary of the decedent. In order to answer this question, we must first determine the meaning of "inactive attorney status." We must, therefore, construe our Rule 756, which, at the time plaintiff filed the challenged lawsuit,[2] provided, in pertinent part:

> "Rule 756. Registration and Fees
>
> (a) Annual Registration Required. Except as hereinafter provided, every attorney admitted to practice law in this State shall register and pay an annual registration fee to the [Attorney Registration and Disciplinary] Commission on or before the first day of January. ***
>
> * * *
>
> (5) An attorney may advise the Administrator [of the ARDC] in writing that he or she desires to assume inactive status and, thereafter, register as an inactive status attorney. The annual registration fee for an inactive status attorney shall be $90.[3] Upon such registration, the attorney shall be placed upon inactive status and shall no longer be eligible to practice law or hold himself or herself out as being authorized to practice law in this

---

[2]This court has amended Rule 756 on several occasions subsequent to December 1, 2005, the date plaintiff filed the medical malpractice action at issue in this appeal. In this opinion, we set forth the version of the rule applicable to plaintiff at the time of the questioned conduct, and which is controlling. However, where appropriate, we also note the differences between that version and the current version of the rule.

[3]The current annual registration fee for an inactive status attorney is $105. Official Reports Advance Sheet No. 20 (September 27, 2006), R. 756(a)(5), eff. September 14, 2006.

State.[4] An attorney who is on the master roll as an inactive status attorney may advise the Administrator in writing that he or she desires to resume the practice of law, and thereafter register as active upon payment of the registration fee required under this rule.[5] If the attorney returns from inactive status after having paid the inactive status fee for the year, the attorney shall pay the difference between the inactive status registration fee and the registration fee required [under this rule]. ***

* * *

(b) The Master Roll. The Administrator shall prepare a master roll of attorneys consisting of the names of attorneys who have registered and have paid or are exempt from paying the registration fee. *** An attorney who is not listed on the master roll is not entitled to practice law or to hold himself out as authorized to practice law in this State. An attorney listed on the master roll as on inactive *** status shall not be entitled to practice law or to hold himself or herself out as authorized to practice law in Illinois." 188 Ill. 2d Rs. 756 (a)(5), (b).

We construe our rules in the same manner as we construe statutes (134 Ill. 2d R. 2; *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 342 (2007)), and our review is *de novo* (*Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 153 (2007)).

---

[4]This court has recently amended Rule 756 by adding a new subsection (j), which provides that an attorney on inactive status may be authorized to provide *pro bono* legal services upon satisfaction of a set of specific conditions. Official Reports Advance Sheet No. 8 (April 9, 2008), Rs. 756(a)(5), (j), eff. July 1, 2008.

[5]The current version of this rule provides that in order to resume active status, an attorney must also submit verification that he or she has complied with the Minimum Continuing Legal Education (MCLE) requirements as set forth in Rule 791(e). In turn, Rule 791(e) provides that an attorney returning to active status from inactive status has 24 months from the date of resuming active status in which to complete the MCLE requirements. 210 Ill. 2d Rs. 756(a)(5), 791(e).

In the instant matter, the parties dispute what, if any, effect plaintiff's change in registration status from "active" to "inactive"–and his resultant "ineligibility" to practice law while maintaining "inactive" status–had upon his credentials and previously obtained license to practice law, and whether, under such circumstances, the nullity rule applies to void his complaint. Plaintiff contends that the appellate court erroneously answered the certified question by holding that the nullity rule mandates the voiding of an otherwise-valid complaint filed by a duly licensed Illinois attorney listed on the master roll of attorneys who was temporarily ineligible to practice law due to payment of the lesser inactive-status fee. Plaintiff maintains that application of the harsh nullity rule to the specific facts presented is unprecedented and unwarranted, and that if he should suffer any adverse consequences as a result of his actions, the reasonable alternative remedy is to submit this matter to the ARDC and its disciplinary process. Defendants counter that the appellate court's answer to the certified question was correct–and that plaintiff's lawsuit should be dismissed as a nullity–because plaintiff's ineligibility to practice law due to his inactive status operates as the equivalent of plaintiff being unlicensed to practice law in this state. We disagree. The arguments advanced by defendants–and the holding of the appellate court below–find no support in the overall scheme of our rules, the plain language of Rule 756, or our prior precedent. Therefore, we agree with the position taken by plaintiff.

It has long been settled that the inherent power to define and regulate the practice of law in this state resides in this court. *Sperry*, 214 Ill. 2d at 382; *People ex rel. Chicago Bar Ass'n v. Goodman*, 366 Ill. 346, 349 (1937). As we recently explained in *Sperry*:

> "To this end, our court has promulgated rules which set forth detailed regulations for the study of law and which govern the admission of applicants to our state bar. See 134 Ill. 2d Rs. 701 through 720. This court has also created a comprehensive scheme to regulate attorneys and discipline them for misconduct. As part of this regulatory scheme, we have promulgated rules of professional conduct for state-licensed attorneys (see 134 Ill. 2d Rs. 1.1 through 8.5), and have constituted an Attorney Registration and Disciplinary Commission (ARDC) (134 Ill. 2d R. 751), and created the

office of an Administrator (134 Ill. 2d R. 752) to supervise '[t]he registration of, and disciplinary proceedings affecting, members of the Illinois bar.' 134 Ill. 2d R. 751(a). In addition, this court has promulgated detailed rules which prescribe the appropriate discipline when the Rules of Professional Conduct are violated. See 134 Ill. 2d Rs. 751 through 775; 137 Ill. 2d Rs. 776, 777; 188 Ill. 2d R. 778; 155 Ill. 2d R. 780. This court has also created a procedural framework within which the ARDC performs its duties to investigate complaints of misconduct against licensed attorneys, hold hearings on those complaints, and provide review of the findings with respect to those complaints. 166 Ill. 2d R. 753." *Sperry*, 214 Ill. 2d at 382-83.

We further explained in *Sperry* that our rules work in tandem to ensure that "only those individuals who are fit and qualified to practice law will be licensed in this state, that those individuals will practice law ethically and with competence, and that any infractions of the Rules of Professional Conduct will be investigated and discipline will be imposed if appropriate." *Sperry*, 214 Ill. 2d at 383.

Rule 756 operates as part of this overall scheme by providing the mechanism for facilitating the annual registration and payment of fees by "every attorney admitted to practice law in this State." 188 Ill. 2d R. 756(a), see also Ill. Ann. Stat., ch. 110A, par. 756, Historical & Practice Notes, at 628 (Smith-Hurd 1985) (Rule 756 "provides for the registration of all attorneys in the state and for the imposition on the members of the Illinois bar of the fees required to maintain the disciplinary system established by the rules"). Thus, under the plain language of this rule, it necessarily follows that those persons who are subject to its provisions have already satisfied all fitness and competency requirements for admission to the Illinois bar. Therefore, because every individual governed by Rule 756 has already been deemed qualified to practice law by virtue of their prior Illinois licensure, it is apparent that this specific rule is not primarily intended to protect the public from harm caused by unlicensed or incompetent individuals. Rather, it is clear that the central purpose of this particular rule is to establish an administrative framework for the annual registration of attorneys licensed in Illinois and to set forth a

graduated annual fee collection schedule, based upon the attorney's ARDC registration status.

An attorney wishing to change his or her ARDC registration status from "active" to that of "an inactive status attorney" must follow the procedures set forth in subsection (a)(5) of Rule 756. Even though "inactive," the attorney must still pay an annual registration fee, although it is reduced to reflect the change in status. In addition, the name of the attorney remains on the master roll, although it is accompanied by the designation that the person is on "inactive" status. The rule provides that for the period the attorney remains on inactive status, he or she "shall no longer be eligible to practice law or hold himself or herself out as being authorized to practice law in this state." Rule 756(a)(5) further provides that an "inactive" attorney may return to "active" status at any time. Under the version of the rule applicable in this case, in order to do so, the attorney simply needed to "advise the Administrator in writing that he or she desires to resume the practice of law, and thereafter register as active upon payment of the registration fee required under this rule."[6] The amount of the required fee depends upon whether the attorney had already paid the "inactive" status registration fee for the year, and the difference between that amount and the applicable "active" registration fee. Significantly, an attorney returns to active status instantly upon paying the fee difference specified in the rule.

Both the appellate court, in its opinion below, and defendants, in their arguments to this court, take the position that an attorney who is no longer "eligible" to practice law while on inactive status pursuant to Rule 756(a)(5) becomes the equivalent of a person who is "unlicensed" to practice law. The plain language of Rule 756, however, clearly refutes such a claim. Although a change in ARDC registration status from "active" to "inactive" is accompanied by a restriction in the attorney's practice to the extent that he or she "shall no longer be eligible to practice law" while on inactive status, it is a fundamental error to equate such a status change with stripping the

---

[6]As noted, the current version of this rule now also requires subsequent verification that the applicable MCLE requirements have been met within 24 months after the attorney returns to active status. 210 Ill. 2d Rs. 756(a)(5), 791(e).

attorney of his or her license to practice law. A change in an individual's ARDC *registration status* has no relation to, and does not call into question, that person's skill, fitness or competency to practice law, which is assured through his or her initially meeting the requirements to obtain–and thereafter to retain–a valid *license* to practice law.

The fundamental difference between an individual who has satisfied the licensing requirement–but runs afoul of a technical or administrative rule–and a person who has no license to practice law was highlighted in *People v. Brigham*, 151 Ill. 2d 58 (1992). In that case, the attorney representing Brigham had been removed from the master roll of attorneys pursuant to Rule 756(d), due to his failure to pay his annual ARDC registration fee. In his postconviction petition, Brigham contended that his sixth amendment right to counsel had been violated because his attorney had been engaged in the unauthorized practice of law as a result of his removal from the master roll, which thereby invalidated the attorney's status as "counsel." The State countered that the failure of Brigham's attorney "to satisfy technical licensing requirements" should not be construed so as to void an otherwise valid judgment, because "[s]uch a shortcoming does not render [counsel's] advice ill or his representation ineffective." *Brigham*, 151 Ill. 2d at 62-63.

In agreeing with the State's position on this issue of first impression in Illinois, we held that there is "an important distinction between (1) an unlicensed person (*e.g.*, an imposter or a disbarred attorney), and (2) an attorney admitted to practice but under suspension for nonpayment of State bar dues." *Brigham*, 151 Ill. 2d at 67. We found to be persuasive decisions from other jurisdictions which held that representation of a criminal defendant by an unlicensed individual constituted denial of the sixth amendment right to counsel, whereas representation by a licensed member of the bar–even if his or her practice was restricted as a consequence of a failure to satisfy technical or administrative requirements–did not. *Brigham*, 151 Ill. 2d at 64-67 (quoting *Reese v. Peters*, 926 F.2d 668, 669-70 (7th Cir. 1991) ("Lawyers who do not pay their dues violate a legal norm, but not one established for the protection of clients"), *Johnson v. State*, 225 Kan. 458, 465, 590 P.2d 1082, 1087 (1979) ("Although the payment of the registration fee is a prerequisite to the

-11-

ethical practice of law in this state, the payment itself has nothing to do with the legal ability of the attorney. Just as the payment of the fee does not guarantee that an attorney will practice law in a competent manner, the nonpayment of the fee does not necessarily imply that the nonpaying attorney will perform in an incompetent manner"), and *Hill v. State*, 393 S.W.2d 901, 904 (Tex. Crim. App. 1965) (Although a delinquent attorney is "prohibited" from practicing law, "[h]e only has to pay his dues *** to resume his status as a 'practicing lawyer,' " and he has not thereby become unlicensed (emphasis omitted)).

In rejecting Brigham's claim, we made it clear that a technical defect in the registration status of a duly licensed attorney was distinguishable from a situation where "the representative has either failed to obtain a law license, has obtained a license through fraudulent means, or has had his license revoked for reasons to do with his competency as an attorney." *Brigham*, 151 Ill. 2d at 67. We concluded that

> "[defense counsel's] admission to the bar allows us to assume that he has the training, knowledge, and ability to represent a client who has chosen him, and that he has attained the ability to render effective assistance to defendant at trial, notwithstanding his suspension for failure to pay his registration dues. To find a defendant's sixth amendment right to counsel to have been violated, there must be additional factors above and beyond a mere suspension for nonpayment of bar dues." *Brigham*, 151 Ill. 2d at 70-71.

We cited *Brigham* as instructive in our subsequent decision in *Sperry,* where we held that the nullity rule had been erroneously applied to void a judgment awarding attorneys fees to a law firm that was not registered as a professional services corporation pursuant to our Rule 721(c). *Sperry*, 214 Ill. 2d at 391. As in *Brigham*, we emphasized in *Sperry* that "there is a fundamental difference between an unlicensed individual representing a party in legal proceedings or performing activities traditionally considered to be the 'practice of law' and duly licensed attorneys who happen to belong to a law firm that has not filed its registration and paid its fees pursuant to Rule 721(c)." *Sperry*, 214 Ill. 2d at 387. We held that the "material inquiry in assessing whether there has been an unauthorized practice of law is whether the individual who acts on behalf of a client is duly

-12-

licensed by this court" (*Sperry*, 214 Ill. 2d at 387), and that "[a] duly licensed attorney who belongs to a firm that lacks Rule 721(c) registration does not, by virtue of the unregistered nature of the firm, engage in the unauthorized practice of law" (*Sperry*, 214 Ill. 2d at 391). Accordingly, as no harm to the public or to the integrity of the court system was presented by the firm's lack of registration, we concluded that the nullity rule had been erroneously applied. *Sperry*, 214 Ill. 2d at 391.

In light of the framework of our rules, the plain language of Rule 756(a)(5), and our precedent as set forth in *Brigham* and *Sperry*, we reject the argument advanced by defendants, based upon the holding of the appellate court below, that plaintiff's inactive status is the equivalent of plaintiff being unlicensed, and that his filing of the complaint in this action constitutes the unlicensed practice of law calling for application of the harsh sanction of the nullity rule to void his actions. Indeed, we note that this case has proceeded from the outset upon the faulty premise that plaintiff–because he was registered as an inactive status attorney–was therefore *unlicensed* to practice law in this state. Defendants' dismissal motion in the trial court was stylized as a "Motion to Dismiss Based on the Plaintiff's *Unlicensed* Practice of Law." (Emphasis added.) Although the trial court rejected defendants' argument and denied their dismissal motion, it thereafter certified the question before us, which contains the misstatement that plaintiff's "license was *reinstated*" (emphasis added) when he resumed active registration status upon paying the fee differential. As we have explained above, a simple change in ARDC registration status does not affect an attorney's license. The term "reinstated" is used in our rules in connection with the completely different situation where an attorney seeks to return to practice after having been disbarred or suspended. See 210 Ill. 2d R. 767.

The appellate court perpetuated this error by incorrectly stating, in its answer to the certified question, that plaintiff was "formerly licensed" to practice law, referring to the time he was registered as being on active status. In explaining its reasoning in support of its answer to the certified question, the appellate court stated that it had found the decision in *Fruin* to be factually analogous, because, like the Wisconsin attorney in that case who was unlicensed in Illinois, plaintiff also "was not licensed" in Illinois due to being on inactive

status. 376 Ill. App. 3d at 999. In addition, the appellate court found *Sperry* to be distinguishable–and therefore not controlling–because in this case there is "no licensed attorney, only the unauthorized practice of law." 376 Ill. App. 3d at 399. The appellate court concluded that plaintiff had filed a complaint "in violation of the plain letter of the law," which "is clear that only a licensed attorney may represent another party." 376 Ill. App. 3d at 999. Finally, just as the trial court improperly used the term "reinstated" to refer to plaintiff's change in registration status from inactive to active, the appellate court also erroneously observed that plaintiff "petitioned for reinstatement" and "was reinstated" to active status upon payment of the appropriate fee.

In their arguments to this court, defendants continue to erroneously use these terms and concepts. For example, in their brief, they maintain that once plaintiff registered with the ARDC as an inactive-status attorney, he was "therefore ineligible to practice law; thus he did not seek, much less obtain, the requisite license to actually practice," and erroneously assert that "[w]hatever plaintiff had by virtue of registering as 'inactive,' it most certainly was not a license allowing him to practice law." In addition, at oral argument, when squarely asked if plaintiff's registration as an inactive-status attorney is equivalent to plaintiff being unlicensed, counsel for defendants replied "yes."

We emphasize that an individual who has (i) graduated from law school; (ii) satisfied this court's character and fitness requirements; (iii) passed the bar examination; and (iv) obtained a license to practice law in this state does not become "unlicensed" by simply choosing to change his or her ARDC registration status from active to inactive. Although Rule 756(a)(5) provides that an attorney on inactive status "shall no longer be eligible to practice law or hold himself or herself out as being authorized to practice law," this limitation on practice for the duration one chooses to remain on inactive status does not mean that this person is thereby stripped of his or her law license. Even though plaintiff was on inactive registration status with the ARDC when he filed the medical malpractice complaint at issue in this appeal in December 2005, he remained–at all times–a licensed and registered member of the Illinois bar throughout the duration of this case. As noted, the lower

-14-

courts in this case employed many terms imprecisely in this action. We caution our courts that such terms must always be used with careful precision.

As discussed, in light of the specific facts in this case, we hold that the purposes served by applying the nullity rule–the protection of the public and the integrity of the court system from the harm presented by representation by unlicensed individuals–are not present here. Accordingly, the appellate court erred in concluding that the nullity rule should be imposed in this case.

We do note, however, that although plaintiff at all times remained licensed, Rule 756(a)(5) provides that he was no longer "eligible" to practice law on the date he filed the medical malpractice complaint by virtue of the fact that he was on inactive status. It is well settled that our rules are not mere suggestions; rather " '[t]hey have the force of law, and the presumption must be that they will be obeyed and enforced as written.' " *People v. Houston*, 226 Ill. 2d 135, 152 (2007), quoting *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). Attorneys are not free to ignore our rules, and, if they are found to have violated these precepts, they will be subject to appropriate discipline.

Here, it is undisputed that plaintiff represented no other clients while on inactive status apart from his father's estate and that plaintiff was the real party in interest, given that he was decedent's sole heir and next-of-kin, and that the estate had no creditors. In other words, plaintiff at no time offered legal services to the public or engaged in the practice of law on behalf of any real party in interest other than himself. Thus, although plaintiff did not comply with the technical provisions of the rule, it is less certain whether he violated its spirit in light of our recognition in the past of exceptions to the rule and our recent amendment to the rule. The current version of Rule 756 now authorizes attorneys on inactive status to provide *pro bono* legal services to persons of limited means or to charitable, civic and similar organizations, under the auspices of a sponsoring entity. Official Reports Advance Sheet No. 8 (April 9, 2008), Rs. 756(a)(5), (j), eff. July 1, 2008. This amendment allows attorneys on inactive status to represent members of the general public under specified circumstances, permitting a broader spectrum of practice for inactive attorneys than what plaintiff performed here, which was limited to his own family situation and for his own benefit. We also note that

plaintiff cured this defect prior to the hearing on defendants' dismissal motion by simply paying the difference between the registration fees assessed to inactive- and active-status lawyers, whereupon he was immediately and automatically returned to active status without having to reestablish his fitness or qualifications to practice law.

Although plaintiff failed to comply with our rule regarding annual registration and the payment of fees, this specific infraction, however, does not warrant the imposition of the harsh nullity rule. As explained, dismissal of this cause would not serve to further the purposes of the nullity rule, the specific issue presented in this appeal.

## CONCLUSION

For the foregoing reasons, we answer the certified question in the negative. Accordingly, we reverse the judgment of the appellate court. We remand this cause to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*

CHIEF JUSTICE FITZGERALD took no part in the consideration or decision of this case.